[Civ. No. 8371. First Appellate District, Division Two.—September 15, 1932.]

EUGENE DIETLIN, Respondent, v. MISSOURI STATE LIFE INSURANCE COMPANY (a Corporation), Appellant. (Two Cases.)

Myrick & Deering and Scott for Appellant.

Edmund J. Holl for Respondent.

SPENCE, J.—Plaintiff brought two actions seeking to recover on three insurance policies issued by the defendant company. One of these actions (superior court No. 212,-855) involved an accident insurance policy and the other (superior court No. 217,765) was based upon two life insurance policies. The actions were consolidated and tried by the court sitting without a jury. Separate judgments were entered in favor of plaintiff, from which judgments defendant appeals upon a bill of exceptions.

Both actions involved the rights of plaintiff under the disability clauses of the policies and we will first outline the nature of plaintiff's injuries and disability as disclosed by the evidence. Plaintiff was a plastering contractor and in his application for the accident policy he "fully described" his occupation and the duties thereof as "Plastering Contractor—Office, Estimating and Supervising Duties Only". On February 18, 1929, and while all the policies were in force, plaintiff fell from a scaffolding and sustained injuries consisting of fractures of both heel bones and a wrenched back. He was confined to a hospital for approximately four months and about a month thereafter was able "to get around". Upon the advice of his physician he then went to the country "where it was warm and where he could walk on soft ground". He remained in Healdsburg for about four months and returned to his home on November 22, 1929. Any disability remaining after he returned was due to the condition of the left foot. The evidence shows that even at the time of the trial in December, 1930, there had not been a complete recovery in said left foot. There was limitation of motion and some pain with the result that there was some disability. The testimony of both plaintiff and his physician indicated, however, that since plaintiff

returned to his home in November, 1929, he could do many things. He could walk about, but his physician testified that due to the left heel he did not believe that plaintiff "could walk uninterruptedly for more than twenty blocks". He could drive an automobile, but the doctor did not "believe a heavy truck could be driven continuously all day by him". Regarding his ability to perform the duties of supervising plastering work, his physician testified: "He will be able to do everything except climb scaffolds and ladders." His physician was then asked: "As far as the work of a contracting plasterer goes, he can do anything in the world except climbing a scaffold, is that about it?" To this question he answered: "As far as I know his duties, if his duties are not too strenuous—for instance I should not think he could carry big beams or things of that sort, but as far as I understand his duties, yes." With reference to his office work, plaintiff himself stated, "There is nothing whatever that would interfere with my doing that." He was asked: "Aside from your left foot what is the matter?" He answered: "There is nothing the matter."

About six months after the foregoing testimony was taken, the case was reopened for further testimony over the objection of defendant. The evidence then introduced showed that plaintiff's physician had since deemed it advisable to perform a further operation on the left foot and had done so. At the time of taking this testimony he still did not think that plaintiff could climb a scaffold, but his prognosis was that plaintiff would be able to resume all of the duties of his occupation in four or five months. He further testified: "The disability under which this man is laboring is a lack of flexibility of the foot because of loss of motion, of sideways motion. So far as carrying sacks of cement or climbing scaffolding, those things I believe he cannot well do." It may be here noted that although the testimony showed that the climbing of scaffolds was one of the duties pertaining to plaintiff's occupation, there was no testimony showing that he was required to or did in fact at any time walk any great distances, drive a heavy truck, or carry big beams, sacks of cement or other heavy objects in connection with his occupation. And it may be further noted that some of such acts would not in any event be in line with the statement of duties as given in respondent's application under

which statement of restricted duties he was classified in the policy as one engaged in a "selected ordinary" occupation.

No payments were made by defendant under the life policies, but, after the accident, defendant commenced payment under the accident policy paying a total disability indemnity covering twenty-two weeks and one day in the total sum of $1107.14 and also hospital indemnity in the sum of $750. Although conceding that further sums were due under the accident policy, a dispute apparently arose as to the totality and permanency of the disability. Thereupon these actions were filed. Briefly stated, plaintiff took the position that at all times after the accident and up to the time the judgments were entered, he was totally disabled within the meaning of the accident policy and that he was totally and permanently disabled within the meaning of the life policies and therefore entitled to the full disability benefits under all of said policies. The trial court so found and concluded and entered judgment accordingly.

Appellant attacks the findings in several particulars, but practically all of the questions raised on this appeal involve an interpretation of the disability clauses of the policies involved. We shall therefore proceed to consider these clauses, first taking up those contained in the accident policy.

### The Accident Policy.

The accident policy insured respondent "against loss resulting from bodily injuries effected directly and independently of all other causes solely through accidental means". The disability indemnity clauses were as follows:

"Total Disability. If such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the insured from date of accident from performing any and every kind of duty pertaining to his occupation, the company will pay, so long as the insured lives and suffers such total disability, the weekly indemnity hereinafter specified.

"Partial Disability. Or, if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the insured from date of accident from performing one or more important daily duties pertaining

to his occupation, or for like continuous disability following total loss of time, the company will pay, during the period of such disability, but not exceeding fifty-two consecutive weeks, a weekly indemnity of one-half of the amount payable per week for total disability."

Appellant concedes that respondent was totally disabled within the meaning of this policy for some time after the injury. That he was totally disabled while in the hospital cannot be questioned and appellant has conceded that such total disability may be said to have continued during the entire time that respondent was in the country where he was advised to go by his physician. Appellant contends, however, that any disability existing after November 22, 1929 (the date upon which he returned from the country), was partial rather than total within the meaning of the policy and that the finding that the disability existing after that date was total is not sustained by the evidence. In our opinion this contention must be sustained. A review of the evidence offered by respondent in support of his claims convinces us that there was no evidence whatever to support the findings to the effect that respondent's disability was total within the meaning of the accident policy after November 22, 1929, and up to the time the case was called for trial. Any disability during that period was due solely to the condition of respondent's left foot. The testimony affirmatively showed that from November 22, 1929, until the trial in December, 1930, respondent could perform "any and every duty pertaining to his occupation" except that his physician did not believe that he could climb scaffolds and ladders. It must be remembered that the duties of respondent's occupation as fully described by him in his application consisted of "Office, Estimating and Supervising Duties Only". His testimony showed that climbing scaffolds and ladders constituted one of the duties pertaining to his occupation but such acts by no means constituted all or even a substantial portion of such duties. Although the evidence was sufficient to show that after November 22, 1929, he was disabled from performing "one or more important daily duties pertaining to his occupation", such disability was clearly a partial disability and not a total disability as defined in the policy as he was not disabled from performing "any and every duty pertaining to his

occupation''. Numerous authorities have been cited by both sides on the interpretation of disability clauses but we find none directly in point. No case has been called to our attention construing the precise language employed in the accident policy in question. The language employed in the disability clause of the accident policy seems entirely clear in its application to the facts in the present case and we find no uncertainty or ambiguity which would bring into play the rule of liberal construction in favor of the assured.

■ In our opinion appellant's further contention to the effect that respondent was not entitled to even partial disability indemnity under the accident policy after November 22, 1929, cannot be sustained. Appellant argues that the continuing partial *disability* after that date was not due alone to the injuries but to arthritis and that there is no liability under the policy as the continuing partial *disability* did not result from the injuries ''independently and exclusively of all other causes''. Appellant's position does not find support in the record. There was some testimony regarding arthritis and the effect thereof on respondent's *condition* but we need not discuss it for appellant's physician gave his opinion that regardless of any arthritic complications the fracture of the left heel alone would have *disabled* respondent up to the time of the trial. This evidence was sufficient to support the finding that the continuing partial *disability* resulted from the injuries ''independently and exclusively of all other causes''.

We therefore conclude that respondent was entitled under the accident policy to total disability indemnity up to November 22, 1929, and to partial disability indemnity for fifty-two weeks following the total disability, being the limit of time provided in the policy for partial disability indemnity.

■ In the briefs counsel for respondent lays stress upon the fact that between the time that evidence was presented in December, 1930, and the time that the cause was reopened for further evidence in June, 1931, respondent was totally disabled for a time by reason of a further operation. Appellant argues that the condition requiring the further operation was due to arthritic complications and not to the injuries ''independently and exclusively of all other causes''. In view of our conclusion that respondent was

only partially and not totally disabled for more than fifty-two weeks following November 22, 1929, we deem it unnecessary to discuss the cause or causes of the alleged subsequent total disability. In order to recover for any period of total disability under the terms of the policy it was necessary to show that the assured was *"wholly and continuously"* disabled from the date of the accident. Even if it be assumed that the alleged total disability following the partial disability resulted solely from the injuries, respondent would not be entitled to the total disability indemnity for such subsequent total disability under the terms of the policy.

One further point should be considered with relation to the accident policy. The policy provided for surgical indemnities in specified amounts for various types of operations. It further provided that "if more than one such operation should be performed on account of such injuries sustained in any one accident, the limit of payment under this Part E shall be the largest sum Specified in the schedule for any one operation". As a result of the accident respondent had two operations, one on each foot, and the trial court allowed twice the amount specified in the schedule for an operation on "Bones of Foot". This was erroneous as the policy clearly limits the payment of surgical indemnities to the "largest amount specified in the schedule for any one operation so performed".

### The Life Policies.

The disability clauses contained in the life insurance policies are essentially different from the above quoted clauses found in the accident policy. These provisions contained in both of the life insurance policies were as follows:

"Total and Permanent Disability Benefit. The Company will pay to the insured a life income of Ten Dollars each month for each $1,000 of the face amount hereof if the said insured shall become totally and permanently disabled, as hereinafter defined, before attaining age sixty. The first payment of such income shall be made immediately upon receipt by the Company of due proof of total and permanent disability, and subsequent payments shall be made monthly thereafter as long as the insured lives and suffers such disability, and shall be in addition to all other benefits provided by this policy.

"Total and permanent disability may be due either to bodily injuries or to disease, which must occur and originate while this policy is in full force after the first premium has been paid, and must be such as to prevent the insured then and at all times thereafter from engaging in any gainful occupation. Total Disability, as defined above, which exists and has existed continuously for not less than three months shall be presumed to be permanent. At any time after approval by the Company of the aforesaid proof and from time to time, but not oftener than once a year after disability has continued for two full years from the date of approval, it may demand of the insured proof of the continuance of such disability and the right to examine the person of the insured. Upon failure to furnish such proof or if it appears that the insured has recovered so as to be able to engage in any gainful occupation, the Company's obligations to pay further Disability Benefits shall cease and the insured shall be required to pay the premiums becoming due on this policy thereafter in accordance with the original terms hereof."

It is appellant's· contention that the evidence is insufficient to support the findings to the effect that respondent was "totally and permanently" disabled within the meaning of the life policies and that therefore respondent was not entitled to any disability benefits thereunder. Upon this subject both appellant and respondent have called our attention to numerous authorities interpreting the "total and permanent" disability clauses of insurance policies. We recently had occasion to review the authorities upon this subject and pointed out in *Bagnall* v. *Travelers Ins. Co.,* 111 Cal. App. 714 [296 Pac. 106, 107], that these authorities are not in accord. We deem it unnecessary, however, to prolong this opinion by a discussion of these authorities as our search has led us to the conclusion that the apparent conflict is attributable to a large extent to the varying terms of the policies considered. It is quite obvious that there is no standard form of "total and permanent" disability clause used in the policies issued by the numerous companies writing such insurance and no case has been called to our attention construing the clauses embodied in the policies in question. In the Bagnall case, *supra,* the policy provided for benefits "Upon due proof that . . . the insured has

become wholly disabled by bodily injuries or disease and will be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit''. The life policies in the present case provide that the bodily injuries or disease ''must be such as to prevent the insured then and at all times thereafter from engaging in any gainful occupation''. We believe that these provisions distinguish these cases from many of the authorities cited. In the absence of further provisions in the policies it is apparent that there would be but few disabilities which would meet the test of both *totality and permanency* as thus defined. In both cases, however, we find what we may term ''time clauses''. Clauses of this type are frequently found in such policies but the authorities show that there is but little similarity in the provisions of such time clauses. In both the Bagnall case and the present case the time fixed was three months, but the time clause which we had occasion to construe in the Bagnall case is essentially different from the time clause found in the policies in the present case. Here it is provided that ''Total disability as defined above, which exists and has existed continuously for not less than three months shall be presumed to be permanent''. It is further provided that thereafter the company ''may demand of the insured proof of the continuance of such disability and the right to examine the person of the assured'' and that the company's liability should cease ''if it appears that the insured has recovered so as to be able to engage in any gainful occupation''.

In the absence of such time clauses expressly creating a presumption of permanency, we are of the opinion that respondent would not be entitled to any disability benefits under the life policies as his disability did not meet the test of being both ''total and permanent'' as defined in the preceding provisions of the policies. The evidence showed that after November 22, 1929, and up to the time the case was called for trial his disability was partial and not total and that even the partial disability was not such as to partially disable him ''then and at all times thereafter'', his physician testifying upon the subsequent hearing that in his opinion such disability would continue for but four or five months thereafter.

However, all of the terms of the policy must be read together and this brings us to a consideration of the presumption referred to above. Respondent's total disability existed continuously for more than three months and therefore such total disability was "presumed to be permanent" within the meaning of the policy. This time clause expressly creating such presumption of permanency seems quite clear. The word "presumed" is defined in Webster's New International Dictionary as "To take or suppose to be true, or entitled to belief without examination or proof, or on the strength of probability; to take for granted; to infer; suppose". But despite the apparent clarity of the words "presumed to be permanent", it is uncertain whether these words were intended to create a conclusive or rebuttable presumption. It has been said that the word "presumed" has "no fast and fixed meaning" and that "in one instance the presumption declared may be only *prima facie* and in another conclusive". (*Wm. R. Moore Dry Goods Co.* v. *Rowe & Carithers,* 99 Miss. 30 [54 South. 659]; note, Ann. Cas. 1913C, 1213.) In this state it was first indicated that the words "presumed to be valid" in section 172a of the Civil Code created a conclusive presumption (*Rice* v. *McCarthy,* 73 Cal. App. 655, 662 [239 Pac. 56]), but subsequently a different conclusion was reached but largely because of other provisions of the codes relating to presumptions created by statute. (*Mark* v. *Title Guarantee & Trust Co.,* 122 Cal. App. 301 [9 Pac. (2d) 839].) The presumption in the present case is not a creature of statute but is found in the agreement of the parties. We cannot assume that the parties merely intended that the presumption should be rebuttable. It is more logical to assume from a reading of all of the disability provisions of the life policies that the parties intended, by creating the presumption, to definitely set at rest the question of whether a total disability continuing for not less than three months should be treated as "permanent" within the meaning of the policies. While the clauses preceding indicate that the disability must be such as to "prevent the insured *then and at all times thereafter* from engaging in any gainful occupation", the clauses following clearly indicate that the company intended to assume liability in some cases until "it appears that the insured has recovered so as to be able to

engage in any gainful occupation''. The preceding clauses indicate the necessity of absolute permanency in order to render the company liable in any case while the clauses following indicate that absolute permanency is not always required. In between stands the clause in question, whereby the parties agreed that total disability existing continuously for not less than three months should be presumed to be ''permanent'' within the meaning of the policies. We believe that a reading of all of these clauses indicates that the parties intended to create a conclusive rather than a rebuttable presumption to apply so as to entitle the assured to the disability benefits during the entire period that such total disability might continuously exist. At any rate these life policies issued by the company are reasonably subject to such construction and under the settled rule, any doubt or uncertainty must be resolved in favor of the assured. (14 Cal. Jur., p. 443, sec. 24.)

Under this construction, respondent was entitled to the disability benefits under the life policies from the date of the accident up to November 22, 1929, as respondent's total disability, existing continuously during said period of approximately nine months, must be treated as ''permanent'' within the meaning of the policies. But it follows from what has been said that the findings to the effect that respondent was totally and permanently disabled within the meaning of said life policies after November 22, 1929, are not sustained by the evidence and that respondent was not thereafter entitled to any disability benefits thereunder.

The judgments appealed from are and each of them is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 15, 1932, and the following opinion then rendered thereon:

THE COURT.—Both appellant and respondent have filed petitions for rehearing herein. In our opinion there is but one point raised in said petitions which requires comment. Appellant contends that in our construction of the life policies we have ignored the fact that the presumption of permanency provided for therein relates only to ''total

disability, *as defined above*" and that the words "as defined above" preserve the definition of permanency, namely, "such as to prevent the insured *then and at all times thereafter* from engaging in any gainful occupation". The only definition found "above" is the one just quoted which defines "total and permanent disability". Neither "total disability" nor "permanent disability" is separately defined at any place in the policy, but this does not mean that the word "total" and the word "permanent" have not separate and distinct meanings. Appellant would have us construe the presumption clause to mean "total *and permanent* disability, as defined above" rather than "total disability, as defined above". If appellant's construction is the correct one, what purpose does the clause creating the presumption of permanency serve when the fact of permanency must be established before the presumption of permanency arises? As we read the policy the "total disability, as defined above" is a disability "such as to prevent the insured . . . from engaging in any gainful occupation". The omitted words "then and at all times thereafter" constitute the definition of permanency. We cannot assume that the clause creating a presumption of permanency when "total disability, as defined above" had existed for not less than three months was inserted in the policies to serve no purpose whatsoever.

The petitions for rehearing are and each of them is denied.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 14, 1932.