[S. F. No. 15435. In Bank.—September 21, 1935.]

EUGENE DIETLIN, Appellant, v. GENERAL AMERICAN LIFE INSURANCE COMPANY (a Corporation), Respondent. (Two consolidated cases.)

338

Edmund J. Holl and George G. Olshausen for Appellant.

Myrick & Deering and Scott for Respondent.

Livingston & Livingston, as *Amici Curiae* on Behalf of Respondent.

WASTE, C. J.—At the time this cause was taken over we were in disagreement with only a portion of the opinion filed herein by the District Court of Appeal, First Appellate District, Division One. We therefore adopt as and for the decision of this court, the following portions of the opinion prepared by Mr. Justice Held, sitting *pro tempore* with the District Court of Appeal:

"Missouri State Life Insurance Company, a corporation, issued to plaintiff and appellant three policies of insurance, each providing for disability payments. One of these policies we designate herein as the 'accident policy', and the other two as the 'life policies'. The provisions as to disability payments in the life policies are identical, but differ from those in the accident policy. The plaintiff was a plastering contractor, and on February 18, 1929, while the above-named policies were in force, he fell from a scaffolding and sustained injuries consisting of fractures of the bones of both heels and a wrenched back. For four months immediately following the accident he was confined to a hospital; thereafter he remained at his home in San Francisco for a month, and then upon the advice of his physician he went to Healdsburg. There he remained until November 22, 1929, at which time he returned to his home in San Francisco. The trial court found that total disability of plaintiff existed until his return from Healdsburg, and that thereafter he was partially disabled only.

"The accident policy provided for weekly payments of $50 each during the period of total disability, so long as the assured might live, and $25 per week during the period of partial disability, but not exceeding fifty-two consecutive weeks. The life policies provided for payments of $10 per month for each $1,000 of the face amount of the policies, if the assured became totally and permanently disabled within the definition of the policies, viz., if the disability be such as to prevent the assured then and at all times thereafter from engaging in any gainful occupation.

"No payments were made by defendant under the life policies. After the accident, payments on the accident policy to the extent of $1,107.14 as disability indemnity, and $750 hospital indemnity, were made by defendant. Defendant conceded further payments were due under the accident policy, but a dispute arose as to the extent of the period for which plaintiff was totally disabled within the meaning of the accident policy, and as to whether the disability was at all total and permanent under the life policies. Thereupon actions were instituted by plaintiff on the policies. These actions were consolidated and tried together in the court below. Separate judgments were entered in favor of plaintiff, and defendant appealed. The judgments were reversed.

(*Dietlin* v. *Missouri State Life Insurance Co.*, 126 Cal. App. 15 [14 Pac. (2d) 331, 15 Pac. (2d) 188].) A second trial was had, the order of consolidation remaining in effect. At the opening of the second trial, an amendment to the answer on the life policies was permitted by the court, which amendment will hereafter be referred to. On the second trial plaintiff had judgment on the accident policy for the sum of $2,208.52. The court found that total disability of plaintiff had terminated on November 22, 1929, and the sum so awarded plaintiff was the aggregate amount (less payments theretofore made) of weekly payments of $50 each from February 18, 1929, to November 22, 1929, and fifty-two weekly payments of $25 each, the maximum period allowed by the policy for partial disability. In addition, the judgment included $30 for surgical attendance.

"On the life policies, judgment went for defendant.

"Plaintiff hås appealed from both judgments, and the appeals are before this court on a single transcript. The Missouri State Life Insurance Company, which issued the policies, was dissolved after entry of judgment in the trial court, and pursuant to stipulation of the parties and order of court General American Life Insurance Company was substituted.

"The difference in the language of the disability provisions of the two forms of policies involved here renders it necessary that the appeals be separately considered.

"In his application for the accident policy the plaintiff stated his occupation as follows: 'Plastering contractor— Office, estimating and supervising duties only.'

"The trial court found and defendant concedes that plaintiff was totally disabled from February 18, 1929, the date of the accident, to November 22, 1929, when plaintiff returned to San Francisco from Healdsburg. The court found, and defendant contends, that after November 22, 1929, the disability of plaintiff was partial only. Following these findings, the court, as heretofore stated, awarded plaintiff $50 per week from February 18, 1929, to November 22, 1929, and $25 per week thereafter for fifty-two weeks, less payments theretofore made. Defendant contends that these findings are in accordance with the decision on the prior appeal. The plaintiff, however, claims that by reason of additional evidence produced by him on the second trial, he has established total

disability without interruption to the month of July, 1931. At the opening of the second trial, his contention was that total and permanent disability existed even then.

"The accident policy provides that total disability exists where the injuries disable the insured from performing 'any and every kind of duty pertaining to his occupation'. Partial disability exists where such injuries disable him from performing 'one or more important daily duties pertaining to his occupation'. The trial court found that his injuries disabled plaintiff from the date of the accident to and including the 22d day of November, 1929, 'from performing any and every kind of duty pertaining to his occupation; that said total disability did not continue subsequent to said 22nd day of November, 1929'. The court also found that said injuries disabled plaintiff from the 22d day of November, 1929, and for a period of fifty-two weeks thereafter 'from performing one or more important daily duties pertaining to his occupation'.

██ "The nature of the duties of plaintiff in following the occupation of 'Plastering contractor—Office, estimating and supervising duties only' was testified to by plaintiff. In the performance of his office work, he was required to visit the offices of various contractors and obtain plans of work to be done. At his office, he made estimates of the cost of such work and the amount of his bid therefor. His office was in his home. If he was awarded a contract on his bid, he would then be required to go upon the job twice a day, and go over the job to take measurements for different ornamental work. He testified that this required his personal attention, which no foreman could do, but had to be done personally. He further testified that in supervising the work it was necessary that he ascend ladders and climb on scaffolds. On cross-examination he testified that on some jobs he had a foreman, and that others he supervised in person. He admitted also that in another action arising out of this accident his deposition was taken, and that he then testified as follows: 'Q. Well, ordinarily in your contracts do you actually do the work? A. No. Q. You just superintend the work? A. I have a foreman on the job to run my work, and I just come to the job to see what is needed, and take the time of the men, and have a talk with my foreman and leave. . . . ' On the trial he admitted that he had made these statements, and that the

same were true. The trial court was therefore justified in accepting such statements as correctly setting forth the duties devolving upon him as a plastering contractor.

"The plaintiff on the second trial testified unequivocally that until July, 1931, he could do no office work. Also, that 'because my feet hurt me too much' he was nervous and unable to concentrate, and as a result could do neither estimating nor supervising work. On the first trial Dr. Dresel, who attended plaintiff following the accident, was asked: 'Q. So far as estimating, as far as placing valuations upon work, as far as entering into contracts as a contracting plasterer, so far as supervising, except the pain, he cannot climb, possibly, but the man has been perfectly competent to perform all other duties in connection with his occupation. That has reference to a mental belief. . . . A. I believe so.' Again: 'Q. What would you say as to his condition at the present time with reference to his ability to perform the duties of supervising plastering work? A. He will be able to do everything except climb scaffolds and ladders.'

"On the first trial Dr. Dresel estimated the distance that plaintiff could walk at not to exceed 20 blocks. His notes produced on the second trial showed that on March 10, 1930, the plaintiff walked half a mile with the use of a cane. This witness also testified on the first trial that plaintiff could operate an automobile.

"Dr. Dresel on the second trial testified to a much greater disability of plaintiff and stated that he had on the previous trial understated the seriousness of the condition of plaintiff. The record here shows also that plaintiff now makes no claim for total disability after July, 1931, and yet on February 18, 1933, he made a claim for total disability on a policy with California Western States Life Insurance Company and Dr. Dresel accompanied this claim with his written statement that the plaintiff was then totally disabled. The trial court was called upon to determine the credibility of the witnesses, and may have chosen to accept the testimony given by Dr. Dresel on December 3, 1930, at the first trial.

"On the first trial, the only witnesses to support the case of plaintiff were the plaintiff himself and Dr. Dresel, and the District Court of Appeal held that the evidence did not warrant a finding of total disability after November 22, 1929. Plaintiff claims, however, that the additional evidence pro-

duced on the second trial demands a finding of total disability until July, 1931. The witnesses who testified on behalf of plaintiff on the second trial, other than plaintiff and Dr. Dresel, were B. F. Barnard, Olga Dietlin, the wife of plaintiff, Carol Dietlin, their son, and Dr. George J. McChesney. Barnard was the man at whose premises in Healdsburg plaintiff spent several months prior to November, 1929. He did not see plaintiff after the latter left Healdsburg; nor does the testimony of this witness indicate that plaintiff was totally disabled when he left Healdsburg. The witness Dr. McChesney first met plaintiff in December, 1930, and testified that plaintiff was then totally disabled. However, when the attention of the witness was called to the nature of plaintiff's duties, he admitted that if they consisted of office work only, to be performed in plaintiff's home, the plaintiff could do such work. The substance of Dr. McChesney's testimony is that it would cause plaintiff some pain and inconvenience to stand on his left foot, but that such pain would not disable him from performing at least some of the duties of his occupation. There is nothing in the testimony of Dr. McChesney that refutes the theory of defendant that plaintiff was only partially disabled on November 22, 1929, more than one year before Dr. McChesney even met plaintiff.

"We have carefully reviewed the testimony of Mrs. Dietlin and Carol Dietlin. Nothing therein adds weight to plaintiff's contention that he was totally disabled after his return from Healdsburg. Their testimony was in the main a recital of subjective symptoms manifested by plaintiff.

"On the previous appeal the reviewing court pointed out wherein the evidence was lacking to establish total disability after November 22, 1929. During total disability, plaintiff was entitled to receive $50 per week. Total disability once terminated could not be reinstated, even though that condition should again result, for under the terms of the policy the totality must be continuous. Any interruption would terminate all payments except to the extent of $25 per week for fifty-two weeks. The trial court here was vested with the power of judging of the credibility of the witnesses, and in the exercise of that function may have had in mind the temptation on the part of plaintiff to magnify the seriousness of his condition. The testimony of his wife and son and that of Dr. Dresel that plaintiff was under greater disability

than previously appeared, was predicated largely upon acts and conduct of plaintiff, the genuineness of which the witnesses could not test.

"At the beginning of the second trial plaintiff contended that at that time (March 27, 1933) the total and permanent disability of plaintiff existed. However, during the trial it appears that the contention of plaintiff was modified, for on April 26, 1933, the record shows: 'Our claim goes only until July of 1931, and we are making no claim here beyond July, 1931, of any claim of total and permanent disability.' This concession is inexplicable. If plaintiff was totally disabled after July, 1931, no reason is apparent why he should waive payment of any sums to which he might be entitled. The trial court might have well attributed this concession to the fact that following the claim of plaintiff's total disability at that time, the attorney for defendant indicated by his examination of one of the witnesses that evidence was in existence which would show that plaintiff was actually engaged for several days shortly preceding the trial in the manual labor of plastering, and did such work upon a scaffold, and therefore could not then be totally disabled. If the trial court adopted this view, the concession by plaintiff operated to discredit his case. The plaintiff admitted on the trial that he had done certain manual labor on March 5th, 6th and 7th, 1933. He admitted also that on March 16, 1933, when a representative of the defendant called upon him, he denied that he was able to do such work. On March 18, 1933, when this same representative found him at work, he admitted that that which he had previously stated as to his condition was not true.

"The present case is one where the conclusion of the trial court is based on conflicting evidence. Not only did the trial judge observe the conduct and demeanor of the witnesses, but he had an opportunity to observe the physical condition of plaintiff and his ability to move about.

"The finding that total disability of plaintiff did not continue subsequent to the 22d day of November, 1929, is based, as we have seen, upon conflicting evidence, and the action of the trial court will not be disturbed. ▇ The rule as to conflict applies not only to a conflict between the witnesses for the respective parties, but between the witnesses for the

same party. (2 Cal. Jur. 930; *Frazee* v. *Fox Film Corp.*, 45 Cal. App. 661 [188 Pac. 286].)

█ "Appellant contends also that even though he was disabled only from performing a material part of his duties as a plastering contractor, he was nevertheless totally disabled within the meaning of the law. It is established by the evidence that on November 22, 1929, the appellant was not able to climb ladders and scaffolds, and also that as a part of his duties as plastering contractor he was required to do so. The policy provides that total disability exists where the injuries disable the insured from performing 'any and every kind of duty pertaining to his occupation'. On the other hand, partial disability exists where he is disabled from performing 'one or more important daily duties pertaining to his occupation'. Appellant complains that the trial court applied a literal construction to the words 'total disability'. We fail to see how the term could have been construed otherwise. He is not totally disabled unless he is prevented from performing 'any and every kind of duty pertaining to his occupation'. If he is disabled only to the extent of being unable to 'perform one or more important daily duties', he is within the definition of the term 'partial disability'.

"There is no contention that it is necessary that appellant be helpless and unable to perform any of his daily duties, to constitute total disability. However, where he is disabled only from performing one or more of those duties, and is able to perform others, he is only partially disabled. It was so held on the former appeal, where it was said: 'Although the evidence was sufficient to show that after November 22, 1929, he was disabled from performing "one or more important daily duties pertaining to his occupation", such disability was clearly a partial disability and not a total disability as defined in the policy as he was not disabled from performing "any and every duty pertaining to his occupation".' We adhere to the construction placed upon the language of the policy on the former appeal.

█ "Appellant complains of alleged misconduct of counsel for respondent in suggesting at the trial that moving pictures were in existence which showed appellant performing labor which he claimed he was unable to perform. It is conceded that 'certain' photographs of plaintiff were taken by a representative of defendant company, but what those photo-

graphs showed does not appear, nor whether they were still or moving pictures. In the cases cited by appellant where alleged misconduct of counsel was relied on, trial was in every instance before a jury. Here the case was tried by the court without a jury. Appellant contends, however, that the trial judge was prevented from passing on the merits of the case by the injection into the case of false quantities, and that therefore the usual presumption that a judge is uninfluenced by extraneous matter does not hold. Certain remarks of the trial judge are relied on to indicate that he was so influenced. But we do not so understand the record. The trial judge stated with reference to moving pictures, 'if the facts as indicated will be developed—I don't know whether they will or not'. This would indicate that the court did not then assume that such pictures existed, nor that they would be produced. His mind was entirely open and unaffected.

"The fact that subsequently the court denied the motion of plaintiff to strike from the record any and all statements made by the attorney for defendant as far as any fraud on the part of plaintiff or his attorney is concerned, is no indication that the court considered as proven the existence of moving pictures of plaintiff at work. The motion was not directed to any statement concerning the photographs. A motion to strike must be directed with precision to the matter sought to be stricken. (24 Cal. Jur. 778.) This was not done here.

"We are satisfied from a careful review of the record that the trial court was in no manner affected by any statement of counsel for plaintiff [defendant] as to the existence of photographs.

"Appellant contends also that the trial court [erred] in excluding testimony which plaintiff sought to elicit and tending to show that the nature of plaintiff's duties was such that if he was unable to perform any thereof, he was unable to perform all, and that therefore if partial disability was shown, total disability would follow. We are satisfied that the trial court followed only the decision on the previous appeal in holding that after ability of plaintiff to perform certain substantial portions of his daily duties had been admitted by plaintiff, proof that he could not perform certain other important portions of those duties was not relevant. Furthermore, the offer of proof made by plaintiff did not tend to

show that his duties were to be considered as a unit or as a whole. The offer was merely to prove that as a part of the supervising duties of a plastering contractor, it was necessary for him to inspect the premises and to climb ladders and scaffolds in doing so. The offer did not go to the extent that if plaintiff could not climb ladders and scaffolds, he could perform none of the duties of a plastering contractor.

"Appellant urges also that 'the court erred in holding pain to be no element of disability'. The alleged error is predicated upon the following record. Plaintiff's counsel asked a witness concerning the plaintiff the following: 'Now, during that time did he at any time utter any exclamation of existing pain and suffering?' The witness answered: 'He did; all the time.' Counsel for defendant made an objection after the question was answered, and the court stated: 'I don't think your pain and suffering enter into this, do they?' Counsel for plaintiff stated that this 'is merely preliminary' and the court said: 'Let's proceed.' No authority is cited by appellant in support of his contention that this was error, and we perceive none in the incident.

"The disability clauses contained in the life insurance policies are essentially different from the above quoted clauses found in the accident policy. These provisions contained in both of the life insurance policies were as follows:

"'Total and Permanent Disability Benefit. The Company will pay to the insured a life income of Ten Dollars each · month for each $1000 of the face amount hereof if the said insured shall become totally and permanently disabled, as hereinafter defined, before attaining age sixty. The first payment of such income shall be made immediately upon receipt by the Company of due proof of total and permanent disability, and subsequent payments shall be made monthly thereafter as long as the insured lives and suffers such disability, and shall be in addition to all other benefits provided by this policy. . . .

"'Total and permanent disability may be due either to bodily injuries or to disease, which must occur and originate while this policy is in full force after the first premium has been paid, and must be such as to prevent the insured then and at all times thereafter from engaging in any gainful occupation. Total Disability, as defined above, which exists

and has existed continuously for not less than three months shall be presumed to be permanent. At any time after approval by the Company of the aforesaid proof and from time to time, but not oftener than once a year after disability has continued for two full years from the date of approval, it may demand of the insured proof of the continuance of such disability and the right to examine the person of the insured. Upon failure to furnish such proof or if it appears that the insured has recovered so as to be able to engage in any gainful occupation, the Company's obligations to pay further Disability Benefits shall cease and the insured shall be required to pay the premiums becoming due on this policy thereafter in accordance with the original terms thereof.'

"On the previous appeal, it was held that the disability clauses in the life policies created a conclusive presumption of permanent disability where total disability continuously existed for not less than three months, and entitled the assured to the disability benefits during the entire period that the total disability might continuously exist. The plaintiff was therefore held entitled to disability benefits under the life policies from the date of the accident to November 22, 1929. At the opening of the second trial defendant sought and was granted permission by the court, and filed an amended answer whereby allegation VI of the complaint was denied for lack of information or belief. There are two allegations so numbered in the complaint, but it is apparent that the allegation referred to is that which reads as follows: 'That said plaintiff Eugene Dietlin has fulfilled and performed all of the conditions, terms and agreements of said policy of insurance on his part to be performed, and that said plaintiff within sixty days before the commencement of this action, gave due notice and proof of injuries received by said plaintiff as aforesaid, and due notice and proof of total and permanent disability resulting therefrom.' The court found: 'That said plaintiff, Eugene Dietlin, has not fulfilled and performed all of the terms and conditions and agreements in said policy on his part to be performed, and that said Eugene Dietlin did not within sixty days before the commencement of this action or at any other time or at all give due or any notice of proof of injury received by plaintiff and of total and permanent disability resulting therefrom.'

"It thus appears that on the second trial the question whether proof of disability was furnished, and if so, whether it was timely, was raised for the first time.

"The complaint on the life policies was filed on March 29, 1930. This pleading alleged the furnishing of proof. The original answer was filed on June 16, 1930, and did not deny that proof was furnished. The case was tried on these pleadings and judgment rendered; an appeal was taken and the appeal decided on September 15, 1932. The amended answer was filed on March 27, 1933. In that pleading, the giving of proof of disability was first denied, and then only for lack of information or belief.

██ "The appellant urges now that the defense of want of proof must be deemed waived, because not sooner raised; and also that the denial is insufficient because made for lack of information or belief of a fact presumptively within the knowledge of defendant.

"It would seem that the defendant should have known and presumably did know when the original answer was filed that no proof of disability had been furnished. That was a fact presumptively within its knowledge. Therefore a denial on information and belief is insufficient. (*Goldwater* v. *Oltman,* 210 Cal. 408 [292 Pac. 624, 71 A. L. R. 871].) In *Janson* v. *Bryant,* 52 Cal. App. 505 [199 Pac. 542], the following quotation from an earlier case is quoted with approval (*Mulcahy* v. *Buckley,* 100 Cal. 484 [35 Pac. 144]) : ' "It has been decided that an allegation of a verified complaint could not be controverted on information and belief where the alleged fact was presumably within the knowledge of the defendant, nor when the defendant had the means of ascertaining whether or not it was true." '

"We therefore hold that there was no sufficient denial of proof of disability. ██ Furthermore, almost three years intervened between the filing of the complaint and the filing of the amended answer which first raised the issue. Presumably, with full knowledge that no proof of disability was given, the defendant went to trial, participated in an appeal, and only when the case was on for trial the second time did defendant deny the furnishing of proof, which it contends was a necessary part of plaintiff's case in the first instance. The case comes squarely within the decision of this court in *Goss*

v. *Security Insurance Co. of Cal.*, 2 Cal. App. (2d) 459 [38 Pac. (2d) 188], decided after the oral argument herein.

"Furthermore, even if the issue had been properly and timely raised, it would seem that where as here the defendant denied all liability, there is a waiver of the condition requiring proof of disability, if it be a condition precedent to recovery. (*Hill* v. *Mutual Benefit Health etc. Assn.*, 136 Cal. App. 508 [29 Pac. (2d) 285]; *Wilkinson* v. *Standard Acc. Ins. Co.*, 180 Cal. 252 [180 Pac. 607]; Restatement of the Law [Contracts], sec. 306.)"

We cannot accept the balance of the District Court of Appeal opinion wherein it is held that though there had been a waiver by defendant of proof of disability, nevertheless it was indispensable that plaintiff furnish such proof during the continued existence of the total disability in order to fix the time when payments under the policies first became due. The circumstances of this case are such that plaintiff's failure to furnish formal proof of disability under the life policies is not fatal to his right to recover on these policies. In our opinion the record indicates that defendant had ample and timely notice and proof of plaintiff's disability. We fully appreciate that such notice and proof were furnished to the accident division of defendant company or to a representative of that division. However, the important fact is that defendant received timely written and oral notice of plaintiff's disability which must be held sufficient to charge defendant on all policies running in favor of the insured. The disability benefit clauses of the life policies provide for payments thereunder "upon receipt by the company of due proof of total and permanent disability. . . . " No particular form of proof is prescribed. That the defendant received "due proof" of plaintiff's disability and made payments to him under the total and permanent disability clauses of the accident policy is, as indicated above, fully established by the record herein. The defendant's division of its business among several departments should not be permitted to work a hardship upon the insured.

It appears from the testimony of defendant's claims adjuster that he was in touch with the plaintiff "within a week or possibly two following the accident". As already intimated, we are not impressed by the fact that this person testi-

fied that he visited plaintiff solely in connection with the accident policy and did not remember that he had at any time discussed with plaintiff the latter's claims under the life policies. The witness would not deny that the life policies had been discussed. He merely was without memory on the subject. Plaintiff, on the other hand testified positively that in June, 1929, during the continuance of the total disability, he had discussed with defendant's representative not only his claim under the accident policy but also his claims under the life policies and that defendant's representative stated ''we will pay you those life policies''. Moreover, the record discloses that under dates of March 25, 1929, May 1, 1929, June 5, 1929, June 27, 1929, and July 23, 1929, upon which last date he left his home to recuperate in the country, plaintiff had filed with the defendant company written reports or affidavits showing total disability to be present at each and all of these times. All of these reports were received by the defendant long prior to the termination of plaintiff's total disability. Their effect, as notice to the defendant of plaintiff's disability, is not lessened, as we have indicated, by the fact that they were furnished in connection with the accident policy. Defendant is chargeable with knowledge of all policies issued by it to the insured. In addition, we find in the record a copy of a letter dated three days prior to the expiration of plaintiff's total disability, wherein he made demand for payment of the disability benefits provided for in the life policies.

We are also of the view that the defendant having waived the defense of want of proof, as declared above, the situation now confronting us is identical with that which existed upon the prior appeal and the following language of the opinion then filed must be held to be the law of the case: ''Under this construction, respondent was entitled to the disability benefits under the life policies from the date of the accident up to November 22, 1929, as respondent's total disability, existing continuously during said period of approximately nine months, must be treated as 'permanent' within the meaning of the policies.'' (126 Cal. App. 15, 26.)

The judgment in the action involving the accident policy, numbered in the court below 212,855, is affirmed. The judgment in the action involving the life policies, numbered in

the court below 217,765, is reversed with directions to the court below to proceed as herein indicated.

Thompson, J., Shenk, J., Langdon, J., and Seawell, J., concurred.

Rehearing denied.