## THWAITES v. JOHN HANCOCK MUT. LIFE INS. CO. OF BOSTON, MASS.
### Civ. No. 1729.

District Court, S. D. California, Central Division.

Nov. 23, 1942.

Birger Tinglof and Carroll W. Harlan, both of Los Angeles, Cal., for plaintiff.

Leo Anderson, of Meserve, Mumper & Hughes, of Los Angeles, Cal., for defendant.

J. F. T. O'CONNOR, District Judge.

This is an action by Elizabeth Thwaites, administratrix with will annexed of the estate of Arthur E. Thwaites, to recover $4,000 representing proceeds allegedly due and payable to the estate of deceased pursuant to the provisions of an insurance policy issued by the defendant, the John Hancock Mutual Life Insurance Co., of Boston, Mass. At the conclusion of the trial of this cause, certain findings were rendered favorable to the plaintiff, thereby obviating the necessity for determining any but the issue of disability. A statement of the facts and the law will, therefore, be confined to the one problem.

The deceased, Arthur E. Thwaites, was employed by Walt Disney Productions in the capacity of an artist. During his employment a group life insurance policy, No. 782 G, was issued by the John Hancock Mutual Life Insurance Co. of Boston, Mass., a corporation. For an undisclosed number of years (as early as six or seven years prior to November 15, 1940) preceding the death of Arthur E. Thwaites, there developed a disorder in his chest, diagnosed as angina pectoris, a condition of the heart. During the interim of his life, the decedent had indulged in the use of intoxicating liquors. Within the period of the above employment, his drinking became so pronounced at indefinite intervals that decedent became temporarily incapacitated from performing his duties, whereby he was required to absent himself. Simultaneously, the ailment (angina pectoris) from which the decedent was suffering gradually increased in seriousness and necessitated frequent absence from work. One specific occasion was in August of 1940 when decedent went to Catalina Island. Other than the above factors and some domestic difficulties, the deceased was satisfactorily performing his work. On November 4, 1940, several hours after the decedent had reported for work, he was requested by the department manager, Mr. Gottfredson, to cease his duties and return to his home due to his inebriated condition. In response to this request, Mr. Thwaites was taken home by one of the employees. After several days deliberation, following November 4, 1940, Mr. Gottfredson decided to discharge Mr. Thwaites. This discharge to be effective November 9, 1940. The personnel department was accordingly notified to this effect. On November 8, 1940, the decedent was informed of the termination of his employment in answer to a telephone call by him to the manager. In addition to the compensation paid to Mr. Thwaites up to and including November 9, 1940, and from which insurance premiums were deducted, the deceased received an amount equivalent to two weeks salary as a donation. No premiums were deducted from the latter amount. From November 4, 1940, until his death on November 15, 1940, decedent had remained in his apartment except that on November 8, 1940, decedent appeared at a court hearing involving his marital affairs. At the time of his death, the insured was fifty-three years of age. On November 14, 1940, Dr. Fogel, who had previously attended decedent, was called upon to treat and observe him. On November 16, 1940, decedent was discovered dead in his apartment. An examination revealed his death occurred on November 15, 1940.

The policy of insurance under which decedent was purportedly covered recited that: "The insurance of any Employee covered hereunder shall end when his employment with the Employer shall end, except in a case where at the time of such termination, the Employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such Employee during the continuance of such disability for the period of three months from the date upon which the Employee ceased to work and thereafter during the continuance of such disability and while this policy shall remain in force until the Employer shall notify the Company to terminate the insurance as to such Employee. Nothing in this paragraph contained shall limit or extend the Permanent Total Disability Benefit to which an Employee shall become entitled under this policy * * *."

The sole and primary question presented for determination is whether the decedent, Arthur E. Thwaites, became wholly prevented and disabled by disease from engaging in any occupation or employment for wage or profit, before or at the time of the termination of his employment, or whether such disability was due entirely to the use of intoxicating liquor. This issue is principally one of fact, and a finding thereon must be resolved from the evidence. A chronological review of the decedent's history as relates to the facts heretofore stated will facilitate an understanding of the case. The record discloses that six or seven years prior to decedent's death Dr. Fogel had been called to attend him in a professional capacity. At that time the doctor found Mr. Thwaites was suffering from a condition of the heart otherwise known as angina pectoris. The doctor further testified that he next saw decedent November 14, 1940 in response to a call by the apartment manager in the house where decedent resided. Then he saw the insured and examined him to ascertain his condition. The symptoms related by decedent on November 14, 1940 to the doctor were "that in the past ten years he had seen many doctors concerning a pain which he had over the left side of his body over the region of the

heart, and which was referred down the left arm. These attacks of pain were quite periodic, necessitating visits * * * to various doctors, each doctor having made a diagnosis of angina pectoris; * * * he had for a year been on typical angina pectoris medication, taking mouth tablets for the relief of pain. At the time when I saw him last, November 14, 1940, he stated that for several days prior to this time he had suffered pain over his heart region, and that the usual medication of mouth tablets was insufficient for the relief of pain. I examined the man at this time, and found his heart sounds were rather distant and of poor quality. At that time I gave him a hypodermic for the relief of pain * * *". Absolute bed rest and hospitalization was advised.

"Q. On that day, Dr. Fogel, did you advise him with respect to continuing work? A. * * * I stated that the man was to remain in bed and that hospitalization would be advisable; therefore, to work would be impossible. * * *

"Q. Is it your opinion that on November 14, 1940, he was suffering from what is known as progressive heart disease? A. I would say yes. * * *

"Q. From your examination did you come to any conclusion as to the cause of his death? A. The man was dead. I attributed his death to a cardiac failure; heart failure. * * *

"Q. From his condition as you found it on November 14, 1940, do you have any opinion as to whether or not on November 9, 1940 he was wholly disabled and prevented by this disease you have indicated from engaging in his occupation? * * * A. That is a difficult question to answer. On November 14 the man was definitely wholly 100 per cent unable to work. Whether he had been able to work the week prior to that would be a very difficult question to answer. * * * If I were pinned down I would say probably not. I could not say definitely not. * * *

"Q. I am asking your opinion. * * * A. Probably not, based on my findings as of the 14th."

On cross examination following an elaboration on the characteristics of angina pectoris, the doctor testified that he discovered evidence of drinking by decedent. In answer to a question of the doctor's opinion as to decedent's condition on November 14, 1940, he stated that: "I believe that drinking, domestic troubles, brought on an acute angina attack, and were the etiological factors in producing this acute attack." Although the presence of these factors would not better the condition of the heart, yet their absence would not hinder the progress of the disease. " * * * but with drinking and with mental disturbances, * * * that heart condition would be accelerated." The doctor's testimony was undisputed, but rather supported by the testimony of the defendant's own witnesses. Mr. Gottfredson testified that decedent had told him "he thought for years that he had heart trouble and complained specifically of pains in the chest, in his arms and wrists and complained that it was difficult for him to walk any great distance without stopping or resting," although it did not interfere with his work. Decedent told the witness that " * * * due to his health and his work, * * * he could not continue as he was continuing, and that it was distressing him very much." Particular attention is directed to the letters on file dated December 5, 1940, and December 19, 1940 from Walt Disney Productions to John Hancock Mutual Life Insurance Co., concerning the condition of the deceased, Arthur Thwaites. While not conclusive, the informative matter indicates a general knowledge of the decedent's health. The first letter declares: "For your information Mr. Thwaites died on November 15th with a heart ailment." The second letter states: "Mr. Thwaites had been absent from work for a period of several days during the first part of November, and from the information furnished by his department head was that Mr. Thwaites had been drinking so much for a long time that he, Mr. Thwaites was not capable of doing his work and for this reason he was discharged on November 9, 1940. * * * I am inclined to believe that it is quite possible that Mr. Thwaites was sick during the time that he was away from the studio the first part of November. His domestic troubles with a bad heart may have been the cause of his absence rather than his drinking." In view of the evidence presented, a finding the least favorable to the plaintiff's contention would be that the decedent, Arthur E. Thwaites, was afflicted on November 4, 1940 with an existing and progressive heart condition medically known as angina pectoris. The decedent's inability to further pursue his employment after that date (November 4, 1940) was due to his progressive heart condition, accelerated by the use of intoxicating liquors and mental anguish caused by domestic diffi-

740

culties. The defendant's contention that the decedent was not disabled from working until after the termination of his employment on November 9, 1940, is not supported by the evidence. On the contrary, the record discloses that at no time after November 4, 1940, when decedent ceased his employment, did he voluntarily or otherwise attempt to return to his work, nor was he able to do so. The only evidence tending to a resumption of his work subsequent to November 4, 1940 was a telephone call by Mr. Thwaites to Mr. Gottfredson on November 8, 1940 requesting a verification of a rumor that he was discharged. Mr. Gottfredson testified: "I verified that; told him that I had."

 According to the testimony of Dr. Fogel: "Angina pectoris is a disputable heart condition among physicians. Some physicians state that it is a disease; some state that it is nothing more than a symptom." "Angina pectoris: a disease marked by paroxysmal thoracic pain, with suffocation and syncope, due to spasm of the systernic arteries, and occurring usually in connection with aortic aneurysm or disease of the heart." The American Illustrated Medical Dictionary (By Dorland); Medical Dictionary for Lawyers (By Maloy). While a difference of opinion exists in the medical profession concerning the exact nature of angina pectoris, yet the uncontradicted testimony of Dr. Fogel that it is a progressive heart disease, and the authorities cited.above, leads this court to conclude that the decedent's disability is within the broad provision of the policy heretofore stated. The facts of the case and the law applicable thereto do not confirm the defendant's view that a waiver of proof of disability was not effected. On January 20, 1940 the defendant sent its letter to the plaintiff's attorney unconditionally denying liability. It states: " * * * we would advise you that the Company has looked into this case and the same has received further consideration. We find that Mr. Thwaites' insurance certificate * * * terminated November 9, 1940, by reason of the fact that his services were terminated with Walt Disney Productions as of that date. As Mr. Thwaites' death occurred on November 15, 1940 subsequent to the date his insurance certificate was terminated, the same was not in benefit on the date of death and there is no liability thereunder for which claim could be made." The controlling principle of law is declared in Rest.

Cont. section 306: "No man is compelled to do a useless act, and if performance of a condition will not be followed by performance of the promise which is conditional, it is useless for the intended purpose and it is therefore unnecessary to perform the condition. A promisee in judging whether performance of a condition will not be followed by performance of the promise is justified in taking the other party at his word." Dietlin v. General American Life Ins. Co., 4 Cal.2d 336, 350, 49 P.2d 590: "A distinct denial of liability by the insurer, and refusal to pay a policy, are a waiver of a condition requiring proof of loss or death." 36 Federal Digest 598, Insurance, ☞789(2); Ætna Ins. Co. v. Indiana Nat. Life Ins. Co., 191 Ind. 55, 133 N.E. 4, 22 A.L.R. 402. While some of the cases cited above are not concerned with disability insurance particularly, yet the rule is the same. The plaintiff will prepare findings of fact and conclusions of law in accordance with this opinion.

Judgment for the plaintiff.