[Civ. No. 2541. Fourth Appellate District.—April 27, 1940.]

FRANK L. HILL, Respondent, v. NEW YORK LIFE IN-
SURANCE COMPANY (a Corporation), Appellant.

W. M. Conley, Philip Conley, Matthew Conley and Conley, Conley & Conley for Appellant.

David E. Peckinpah, Harold M. Child and L. N. Barber for Respondent.

GRIFFIN, J.—This is an action to recover total and permanent disability benefits under two life insurance policies. Plaintiff and respondent alleged in his first cause of action the writing of a $5,000 policy on March 13, 1928; that on March 11, 1932, he became permanently and totally disabled; that the defendant and appellant paid him the sum of $50 per month from March 11, 1932, to June 11, 1935, and waived payments of premiums during that period; that he continued and remained so disabled to the date of the filing of the complaint (January 18, 1938); that defendant has not paid the total and permanent disability benefits from the 11th day of June, 1935, to the commencement of the action ($50 per month to March 11, 1937, then $75 per month); that he had paid premiums on this policy from the 11th day of June, 1935, to the commencement of the action, totaling $246.40. In the second cause of action he alleged the issuance of the policy for $1,000 on June 3, 1925, and sought recovery of total disability benefits at the rate of $10 per month from June 11, 1935, to the date of the commencement of the action, together with the sum of $132.90, paid in premiums after June 11, 1935.

Appellant's answer admitted the writing of the policies and the payment of the premiums referred to, but denied that respondent suffered "total and permanent disability" during the period in question, and that any payments became, or are, due or payable, or that the premiums should be repaid. The $5,000 policy contains the following provisions in reference to total and permanent disability:

"Disability shall be considered total whenever the Insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the insurance under this policy took effect . . .

"(a) Waiver of Premium.—The Company will waive the payment of any premium falling due during the period of continuous total disability, . . . if the Insured performs any work, or follows any occupation, or engages in any business for remuneration or profit, no further income payments shall be made nor premiums waived."

The $1,000 policy provides:

"1. Total Disability.—Disability shall be deemed to be total whenever the Insured is wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit. . . . if at any time it shall appear to the Company that the Insured is able to engage in any occupation for remuneration or profit, no further income payments shall be made nor premiums waived."

Appellant now contends (1) that the record shows that during the period in question respondent was not totally and permanently disabled within the meaning of the policy provisions; (2) that the disability from which plaintiff is suffering is congenital and antedated the writing of the policies and did not arise after the issuance of the policies, and that therefore no recovery is allowable; (3) that the court erred in giving and refusing certain instructions; and (4) that the amount of the recovery exceeds the amount prayed for in plaintiff's complaint.

An examination of the record discloses that the stepfather of Frank L. Hill, the respondent and the insured, took out the policies of insurance and paid the premiums thereon while the respondent was working as a truck driver for him. A

physical examination was then made by the appellant's doctor. The insured was accepted as a proper risk. His health became impaired and in March, 1932, his physician diagnosed his trouble as "hypothyroidism, meaning a lowered activity of the thyroid gland, and hypopituitarism, which means lowered activity of the pituitary gland in the brain; and then certain other conditions which would naturally be associated with a glandular disturbance, because all glands more or less work in harmony with one another, or are interdependent upon one another. . . . He had been complaining of mental apathy, physical fatigue, slowness of his actions, excessive nervousness, sleeplessness, obesity, that is, gaining weight, headaches, vomiting spells and dizziness on occasions." He testified that he had seen respondent on a great many dozen occasions; that at the time he saw him in March, 1932, respondent was, in his opinion, totally disabled; and that it was his opinion that he "could not have engaged in any occupation, sustained himself at it for any time for profit or gain"; that he examined him on several occasions in 1935, and that on each of those occasions the symptoms were essentially the same as they had been on the first visit. In response to the following question: "Dr. Staniford, will you state when in your opinion the hypothyroid condition you found in Frank Hill when you examined him in 1932, began to develop, from your study of this case?" the doctor replied: "From the history I received, I would be of the opinion that it started approximately two years prior to March, 1932, when I first saw him. The history was that these symptoms had been becoming prominent and disturbing over a period of two years." This evidence was corroborated by the mother of the respondent. She testified that "he (respondent) complains of a tight band around his head, he calls it, and most any time in the night he will get sick, . . . he will get me up and he will be dizzy and break out in a sweat and turn kind of blue and vomit". She further testified that she did not observe any of those conditions before 1932.

Respondent filed a disability claim and on June 21, 1932, a Dr. Boyd, who made the original examination, reexamined respondent and reported his blood pressure as "systolic pressure, was 146 and diastolic pressure was 80", making a difference of 66 millimeters of mercury which he testified "was out of line with good health", and he then reported that the

insured was "wholly, continuously prevented from perform‑ing all gainful occupations". Although the insured reported his glandular trouble, he testified that there were no symp‑toms that showed the thyroid or pituitary gland defective in any way. Respondent was then classified as permanently disabled. Dr. Boyd examined respondent again in 1935 and reported that he "was physically fit to work". Thereupon the appellant notified respondent of the cessation of the total disability benefits and thereafter demanded payment of pre‑miums, which were paid as heretofore stated.

It is quite apparent from the evidence that even though there may have been a conflict as to whether certain physical conditions, which contributed to the disability, may have existed from birth, nevertheless the disability itself, as de‑scribed, apparently did not appear until after the issuance of the policies. The jury was fully justified in reaching this conclusion.

It appears from the record that respondent, although 34 years of age, had a mental classification of a 12-year-old child; that there was a mental deficiency and a retarded develop‑ment. He was unable to perform any particular employment due to his dizzy spells and general condition. It is now claimed by appellant that by reason of certain temporary em‑ployment hereinafter described, it was fully justified in claim‑ing that respondent violated the conditions of the policies, viz., "if the insured performs any work, or follows any occupation, or engages in any business for remuneration or profit", or "if at any time it shall appear to the Company that the In‑sured is able to engage in any occupation for remuneration or profit, no further income payments shall be made nor pre‑miums waived."

The respondent worked for J. B. Hill Company as a truck driver until 1932, when he became ill. He lived at home with his mother. He tried to find work but was unable to hold any position. He would have spells and come home. He described his illness as follows: "Well, I just get cold sweats and feel like I was going to go out, and fall up against a wall and turn—things turn black in front of me and I just have to—somebody just has to help me in. I have to lay down for an hour until I get so I could get up and walk again." In 1936 he tried to work for a dairy company. He remained at home three or four weeks, soliciting and calling

friends of the family on the phone in an endeavor to influence them to purchase products from the dairy company, for which he was to receive a commission on the business obtained for it. The evidence discloses that he only worked a day or two a week. He received about $15 in commissions. Due to illness he quit his work. In the same year he worked eight or ten days in a combination oil station and grocery store. He worked two or three hours in one day and would be off on account of his spells for a day or a week. He received 25 cents, and sometimes 50 cents, per day as wages. He wrecked the proprietor's truck when a dizzy spell came over him. He drove his mother's car for her on several trips. This is about the extent of his claimed employment and ability to work since 1932.

Appellant argues that the evidence shows that the plaintiff is well able to engage in several occupations for remuneration and that under the provisions of the policy, this fact worked a termination of his right to disability benefit payments, citing *Job* v. *Equitable Life Ins. Co.,* 133 Cal. App. (Supp.) 791 [2 Cal. Supp. 68, 22 Pac. (2d) 607], *Metropolitan Life Ins. Co.* v. *Wann,* (Tex. Civ. App.) 28 S. W. (2d) 196, *Buckner* v. *Jefferson Standard Life Ins. Co.,* 172 N. C. 762 [90 S. E. 897], *Dietlin* v. *General American Life Ins. Co.,* 4 Cal. (2d) 336, 345 [49 Pac. (2d) 590], and *Dietlin* v. *Missouri State Life Ins. Co.,* 126 Cal. App. 15, 23 [14 Pac. (2d) 331, 15 Pac. (2d) 188].

In answer to appellant's argument respondent contends that in the present case the evidence shows that respondent is unable to perform the duties of any remunerative employment or conduct any business for profit; that under the terms of the policy he is entitled to the monthly payments unless he is able to perform substantially all of the duties of some employment or business for remuneration or profit.

In *Wright* v. *Prudential Ins. Co., etc.,* 27 Cal. App. (2d) 195, 205 [80 Pac. (2d) 752], this court, after an exhaustive review of the decisions, which is unnecessary to repeat here, held that although plaintiff Wright continued to follow his employment for a limited time after the policy ceased to be in effect and performed limited services and received compensation therefor during that period, a finding that he became totally and permanently disabled while the policy was in force had sufficient evidentiary support and was conclusive,

where it appeared that during the life of the policy plaintiff was suffering from a severe ailment which prevented him from performing the substantial duties of his occupation in the usual way, and that such ailment had then reached a stage where, in the exercise of ordinary care for his own health, he ought to have ceased work, not temporarily only, but permanently and entirely. In support of our decision, *Fitzgerald* v. *Globe Indemnity Co. of N. Y.*, 84 Cal. App. 689 [258 Pac. 458], was quoted as follows:

"The weight of authority supports the view that provisions in accident policies for indemnity in the event the insured is totally or wholly disabled do not require that the accident shall render the insured absolutely helpless, but such provisions are construed as meaning such a disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. (Citing authorities.) An examination of the cases cited herein shows that the same rule applies in cases of disability caused by disease."

We therefore believe that we should regard the policy as one designed to provide a substitute for earnings when the insured is deprived of his capacity to earn by bodily injury or disease. He must be prevented from performing work and conducting business for compensation or profit. Interpreting the policy in the light of its purpose, the words "performing any work" mean engaging in any gainful occupation or employment in the customary manner as a workman. The definitions contemplate the substantial doing of those things which are generally regarded as constituting performance of work and conduct of business, and not simply the sporadic doing of simple tasks, or the giving of attention to simple details, incident to performance of work or conduct of business. The definitions also contemplate that compensation shall be in a fair sense remunerative, and not merely nominal. The subject of what respondent herein was and will be able to do was fully investigated at the trial. There was no substantial evidence that he could perform work for compensation or profit in any department of labor or industry, as workmen are employed to perform work and as workmen are remunerated for doing work. This court has fully considered the authorities cited by counsel. If the court were to review them adequately it would be necessary to discriminate between

classes of insurance and between policy provisions, to state the essential facts of cases and then to state and appraise the decisions. Such a review would require more time than the court can devote to it. In this instance the court has not recognized the so-called strict and liberal methods of interpreting indemnity policies. We have taken the words of the policy as we find them, and as persons would usually and ordinarily understand them, and as used to express the purpose for which they were employed. So considered, the evidence authorized the jury to say that, while this man can do a number of things, chiefly petty, he cannot work or conduct a business for compensation or profit.

The jury, as well as the trial judge, had the opportunity to observe the physical and mental condition of the respondent, and were fully justified in reaching the conclusion that he was not ''able to engage in any occupation for remuneration or profit'' or to ''perform any work or follow any occupation or engage in any business for remuneration or profit''. The jury's finding on the two subjects discussed cannot be disturbed on appeal.

■ Appellant claims that the trial court committed prejudicial error in refusing to read to the jury the provisions of the Vehicle Code relating to chauffeur's licenses and in refusing to give its instructions reading in part as follows:

''The policies here in question are not accident insurance policies, or health insurance policies or occupational insurance policies; . . . Mere proof of the fact that plaintiff is diseased, or ill or even partially disabled would not entitle him to a judgment in his favor. . . . ''

'' . . . Even if by reason of ill health plaintiff could not do all of the work which he performed before his ill health, you cannot find a verdict in his favor, if you believe from the evidence that he was, during the period in question, physically and mentally able to engage in some other occupation for remuneration or profit . . . ''

'' . . . You would not be justified in bringing in a verdict for the plaintiff under the policies here in question merely because he has shown that he has suffered, or now suffers, from disease or ill health, or that he is not now able to carry on all of the work which he did before the onset of his disease or ill health. . . . ''

A specific instruction to the same effect and as to each policy was offered and refused. The trial court, however, did read, as a part of the instructions offered by appellant, the terms of the policy, followed by a general instruction offered by appellant which adequately and properly covered the instructions offered and refused. It reads:

"The plaintiff in this action is not entitled to recover any sum whatsoever unless you shall find by a preponderance of evidence that plaintiff was, during the period for which recovery is sought, totally and permanently disabled by bodily injury or disease, so that he was prevented thereby from engaging in any occupation whatsoever for remuneration or profit. Proof that the plaintiff was only partially disabled, during such period, from engaging in an occupation for remuneration or profit, would not entitle him to recover. In order to recover in this action, plaintiff must prove by a preponderance of the evidence that during a specific period of time, he was both totally and permanently disabled by bodily injury or disease, so that he was prevented from engaging in any occupation whatsoever for remuneration or profit. If plaintiff has not made such proof, it is your duty to bring in a verdict in favor of the defendant."

In addition, the trial court, at the request of respondent, gave an instruction on the subject to the same effect as the rule laid down in *Wright* v. *Prudential Ins. Co., etc., supra; Fitzgerald* v. *Globe Indemnity Co. of N. Y., supra;* and *Maresh* v. *Peoria Life Ins. Co.,* 133 Kan. 191 [299 Pac. 934]. We therefore conclude that the jury were properly instructed on that subject and the refusal to give the proffered instructions was justified.

■ Appellant takes exception to the use of the word *his* instead of *any* in another instruction offered by respondent and given by the court. It reads in part:

"The court instructs you that provisions in insurance policies for the payment of benefits for total disability do not require that the insured shall be absolutely helpless, but such provisions are construed as meaning such a disability as renders him unable to perform the substantial and material acts of *his* business or occupation in the usual and customary way." (Italics ours.)

It is argued that by this instruction the court has told the jury that any disability rendering the insured unable to per-

form the substantial and material acts of *his* business or occupation would permit him to recover. The instruction, although erroneous when considered alone, was correct when considered together with the other instructions given. The court read the provisions of the policy in which it was recited that if the insured "is able to engage in any occupation . . . , no further income payments shall be made", etc. The cited instance appears to be the only time the expression *"his* business or occupation" was used. In all of the other instructions the words *"any* business or occupation" were repeatedly used. In *Wright* v. *Prudential Ins. Co., etc., supra,* the court quotes from *Prudential Ins. Co., etc.,* v. *South,* 179 Ga. 653 [177 S. E. 499, 98 A. L. R. 781], where it was said that the expressions "any occupation" and "any work", "should be construed to mean the ordinary employment of the particular person insured, or such other employment, if any, approximating the same livelihood, as the insured might fairly be expected to follow, in view of his station, circumstances, and physical and mental capabilities. . . . If the insured is so incapacitated that substantially all of the material activities of any such employment are reasonably closed to him, he is totally disabled within the meaning of the policy."

The apparent wording might have been confusing to the jury if respondent had any trade or profession which his ailment prevented him from pursuing, while, at the same time it left him able to follow some other occupation. But there was no evidence that any such condition existed. The evidence shows without any conflict that the respondent was lacking in mental capacity to follow a skilled trade or profession, or to engage in anything but unskilled labor. The evidence showed that he tried, without success, to engage in several other kinds of work, and in general, tended to show lack of capacity for sustained effort of any kind. Considering the instructions as a whole, we are convinced that the jury was not prejudiced by the giving of the objectionable instruction.                                                     •

██ The complaint prays for judgment in the sum of $2,489.30 "with interest on the monthly payments remaining due and unpaid from the date of the maturity of said payments at the rate of 7 per cent per annum . . . ". The prayer does not seek interest on the sums paid as premiums

on the two policies. The amount of the recovery was a general verdict of $2,933.64. Appellant claims that a calculation, including all monthly payments alleged to be due, with interest thereon to the date of the verdict, and an addition of all sums paid as premiums during that period, amounts to $2,904.77. The difference as thus calculated, is $28.87. We are unable to determine what proportion of the general verdict was for interest, for payments due, or for recovery of premiums paid. The amount of the verdict is sufficiently supported by the evidence. In a contested case, interest may be awarded, if the plaintiff is entitled thereto, notwithstanding the complaint contains no prayer for interest. (*Durbin* v. *Hillman,* 50 Cal. App. 377, 382 [195 Pac. 274]. See, also, sec. 580, Code Civ. Proc.)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 24, 1940.