[Civ. No. 12046. First Dist., Div. Two. Oct. 19, 1942.]

LLOYD C. TROUSDELL, Respondent, v. THE EQUI-
TABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES (a Corporation), Appellant.

Pillsbury, Madison & Sutro for Appellant.

J. Rainey Hancock for Respondent.

NOURSE, P. J.—Plaintiff brought this action to recover "total and permanent" disability benefits under eight policies of insurance theretofore issued by defendant. In its cross-complaint defendant sought the cancellation of the disability provisions of six of the policies upon the ground that their issuance had been induced by false representations. The lower court, sitting without a jury, rendered judgment in favor of plaintiff both on the complaint and cross-complaint from which judgment defendant and cross-complainant has prosecuted this appeal. Appellant contends that the judgment is erroneous in three respects: first, that the evidence is insufficient to support the court's findings on the cross-complaint that the disability provisions sought to be cancelled were not procured by material false representations; second, that the evidence is insufficient to support the finding that plaintiff was permanently and totally disabled; and third, that the court improperly construed the provisions of the policies in determining the dates from which payment should have been made.

In his answer to the cross-complaint plaintiff alleged as a special defense that the provisions for disability could not

be attacked on the grounds alleged in the cross-complaint because of the incontestability clauses of the several policies. The lower court did not make any finding on this defense, but the lack of a finding is not raised by appellant.

■ Having concluded, for the reasons hereinafter set forth, that the incontestability clauses are applicable to the defense of fraudulent representations in the procurement of the policies, it will not be necessary to consider at length appellant's contention as to the insufficiency of the evidence to support the findings upon the issue of fraudulent representations. In this connection it is sufficient to state that when respondent made application for insurance in 1930 he failed to disclose that in 1927 he had consulted a physician and was treated for a slight stomach illness by a Dr. Ryan and that X-rays then taken had disclosed that the gall bladder did not function normally. That the condition was not deemed serious, by either the patient or the attending physician, is shown by the fact that no further trouble developed at the time and that no further medical treatment was given. The evidence upon which appellant depended in proof of this issue was not satisfactory, it appearing that Dr. Ryan had died a few weeks before the trial. The testimony of appellant's witnesses tending to prove the materiality of the representations complained of and that they were made falsely and with the intent to deceive was equally unsatisfactory. We refer to this state of the evidence not in criticism of appellant's presentation but as indicative of the failure to meet the test of the proof of actionable fraud. The rule that such proof cannot rest upon mere suspicion or conjecture is well stated in *Truett* v. *Onderdonk,* 120 Cal. 581, 588 [53 P. 26], where it is said: "The presumption is always against fraud, a presumption approximating in strength to that of innocence of crime, and it should not be deemed overcome, even prima facie, upon a showing so intangible and shadowy."

In accord with this principle an appellate court will not search the record to discover the evidence which supports the finding of the trial court. It is sufficient that the trial court might have viewed the evidence as failing to meet the test of the burden of proof above indicated. In this connection it must be borne in mind that the burden which appellants assumed was to prove that "the representations were false," that respondent "knew (them) to be false," that they

were made "with intent to deceive," and that they were "relied upon by appellant" to its injury.

But, if we should assume for the purpose of the opinion that the evidence was insufficient to support those findings, we cannot escape the conclusion that it was not a valid defense, because of the incontestability clauses of the policies. For this discussion the policies will be designated 1, 2, 3, 4, 5, 6, 7 and 8 to correspond to the numbers assigned them when introduced as plaintiff's first eight exhibits. Appellant did not seek rescission of policies 2 and 3. Both were issued before the date of the alleged illness which appellant claims was falsely concealed.

Policy 1 was issued on September 14, 1921, but the provisions for disability were not added until March 18, 1930. This was done by the insertion of a rider. The first page of the original policy contains the provisions: "This policy shall be incontestable after one year from its date of issue, provided premiums have been duly paid, subject to the provisions as to age stated on the second page hereof." The rider is designated "page 2A"; included therein is this statement: "The provisions of said policy with respect to Incontestability and Freedom of Travel, Residence and Occupation shall not apply to this Disability provision." At the same time that this rider was attached to the policy there was also attached a rider providing for double indemnity in case of accidental death. This rider did not contain any exception to the incontestability clause. The two additional provisions were granted on a single application. It is certain of the answers contained in this application which are claimed by the company to be untrue. A copy of the application is attached to the policy and includes the provision: "I agree . . . that the foregoing answers shall also become part of any policy contract that may be issued on the strength thereof."

Policies numbered 4 to 8 inclusive, all dated February 27, 1930, are identical and need not be separately considered. On the first page, after providing for a death benefit and double indemnity in case of accidental death, the policy provides: "And further, if the Insured before age 60 becomes TOTALLY and presumably PERMANENTLY DISABLED as defined in the Total and Permanent Disability provision on the third page hereof, the Society will, subject to the conditions of such provision, waive subsequent premiums and

pay to the Insured a DISABILITY INCOME. . . ." Attached to the policy is a copy of the application which contains a statement identical to that hereinbefore quoted from policy 1. On the second page of the policy under the heading "Incontestability and Freedom of Travel, Residence and Occupation" there is the statement: "This policy, except as to the provisions relating to Disability and Double Indemnity, shall be (a) INCONTESTABLE after it has been in force during the lifetime of the Insured for a period of one year from its date of issue, provided premiums have been duly paid. . . ." The provisions for disability on the third page do not contain any reference to contestability or to procurement by fraud or misrepresentation. Each of these five policies was not to be effective until January 28, 1932. In connection with each there was issued as a part of the same transaction a two-year term insurance policy which in each case is attached to the principal policy. The term policy provided for the same benefits as the permanent policy. It then provided for incontestability after one year without any exception of the disability provisions. On the third page of the permanent policies there is a stamped endorsement which states, among other things, "2. That this policy shall be INCONTESTABLE as soon as the aforesaid Two Year Term Policy shall be incontestable."

So far as we are aware no appellate court of this state has considered an exception to a disability clause wherein the phraseology was identical to that here involved. Excepting clauses which are somewhat similar have been considered on four occasions and in each case the excepting clause has been held not to permit a contest for fraudulent representations in the procurement of the policies. In *Mutual Life Ins. Co.* v. *Margolis*, 11 Cal.App.2d 382, 384 [53 P.2d 1017], the exception read: "except for the restrictions and provisions applying to the double indemnity and disability benefits, as provided in sections 1 and 3, respectively, this policy shall be incontestable. . . ." In *Coodley* v. *New York Life Ins. Co.*, 9 Cal.2d 269 [70 P.2d 602], the clause was: "This policy shall be incontestable . . . except as to provisions and conditions relating to disability benefits." (Hereinafter referred to as the New York Life clause.) (*Blair* v. *New York Life Ins. Co.*, 40 Cal.App.2d 494 [104 P.2d 1075] and *Braun* v. *New York Life Ins. Co.*, 46 Cal.App.2d 335 [115 P.2d 880], involved exceptions identical to that in the Coodley case. What-

ever may be the rule in other jurisdictions, and there is respectable authority to the contrary, it is apparent that we are bound by these decisions unless the clause here involved can be distinguished.

Appellant relies upon *Equitable Life Assur. Co.* v. *Deem,* (C.C.A. 4th) 91 F.2d 569, wherein certiorari was denied (302 U.S. 744 [58 S.Ct. 146, 82 L.Ed. 575]) as establishing the distinction. It is true that the Deem case attempts to make the distinction and this same distinction is made in *Malloy* v. *New York Life Ins. Co.,* 103 F.2d 439 (C.C.A. 1st Apr. 1939) wherein the court held the New York Life clause to bar a contest. But in *Terry* v. *New York Life Ins. Co.,* 104 F.2d 498 (C.C.A. 8th June, 1939) in reaching the opposite result under the New York Life clause the court treats the two clauses as substantially the same. In *New York Life Ins. Co.* v. *Rotman,* — Iowa —, 3 N.W.2d 603, a case involving the New York Life clause, in referring to the clause in the Deem case (as well as that in *Smith* v. *Equitable Life Assur. Co.,* 169 Tenn. 477 [89 S.W.2d 165] and *Greber* v. *Equitable Life Assur. Soc.,* 43 Ariz. 1 [28 P.2d 817], both relied upon in the Deems case and hereinafter referred to) the court characterizes them as ''Incontestability clauses in form and language substantially the same as that here in question.'' In *Klanian* v. *New York Life Ins. Co.,* — R.I.—, 26 A.2d 608, the court treats the Deem case as opposed to its holding that the defense was precluded by the New York Life clause. So, too, in *Grauer* v. *Equitable Life Assur. Co.,* 167 Misc. 30, [3 N.Y.S.2d 564] (N.Y. Supreme Ct.) the two clauses are treated as substantially alike. The Deem case cites and relies upon three cases. (*Smith* v. *Equitable Life Assur. Soc., supra; Greber* v. *Equitable Life Assur. Soc., supra,* and *Guardian Life Ins. Co.* v. *Katz,* 243 App.Div. 11 [275 N.Y.S. 743].) The last mentioned of these relies in turn upon two memorandum decisions, from the same jurisdiction, at least one of which (*Chambers* v. *New York Life Ins. Co.,* 148 Misc. 561 [265 N.Y.S. 217]) involved the New York Life clause, and a Mississippi case which in no way involved the point. The Greber case does not cite or discuss any other authorities. The Smith case, which is the only one of the three wherein any considerable attention is given to other decisions, does refer to differences in wording in other clauses but the court then proceeds to cite and rely upon cases involving the New York Life clause in support of its conclu-

sion to such an extent that the court adopts as its own the language of Judge Schoonmaker in *New York Life Ins. Co.* v. *Davis* (5 F.Supp. 316), which involved the New York Life clause. The decisions upon which the Deem case relies are not based upon the distinction therein sought to be made between the clauses employed in the New York Life and Equitable policies and, with the exception of *Malloy* v. *New York Life, supra,* and possibly the case of *Isom* v. *Equitable Life Assur. Soc.,* 138 Fla. 260 [189 So. 253], the cases which have subsequently cited the Deem case treat the two clauses as substantially the same. In *Kiriakides* v. *Equitable Life Assur. Soc.,* 174 S.C. 140 [177 S.E. 40] the court reached the opposite result from the Deem case and in so doing employed the same reasoning as that involved in *Coodley* v. *New York Life Ins. Co.* Admittedly the decisions in the various jurisdictions are squarely conflicting but this conflict is not to be resolved by fine distinctions in language, the meaning of which is substantially identical. This case is controlled by the decision in *Coodley* v. *New York Life Ins. Co., supra.*

We are not inclined to agree with the concession of respondent that the excepting clause in policy 1 is to be given a different construction from those in the permanent policy provisions in policies 4 to 8. As is above noted the language of each is practically identical. Appellant's argument with respect to policies 4 to 8 was based upon the absence of the words ''and conditions'' following the word ''provisions'' in the excepting clause, which words were contained in the New York Life clause, but this is equally true of policy 1. Respondent's concession is apparently based upon the relative positions of the excepting clauses in the policies and a misunderstanding of the *ratio decidendi* of the opinion in *Coodley* v. *New York Life Ins. Co.* In policy 1 the exception is contained in the body of the disability provisions but this is for the obvious reason that these provisions were added at a later date. The only representations claimed to be false were contained in the application attached at the same time as the disability provisions but this application was equally applicable to the double indemnity provisions also added at that time. In the Coodley case the court at page 272 said: ''On the other hand, it is respondent's contention that the exception in the incontestable clause 'as to provisions and conditions relating to disability benefits' reserves only unto the insurance company the right to set up as defenses against

any claim for disability benefits, the provisions and conditions set forth in the body of the policy, viz., on page headed 'Total and Permanent Disability', and that fraud not being mentioned as a provision or condition under such heading, and not being excepted in the incontestable clause itself, that, therefore, the defendant and appellant is barred and precluded by the incontestable clause from contesting the policy and any claim thereunder on the grounds of alleged fraud in the application and precluded from attacking the validity of the policy, or any portion or part thereof, for alleged fraud in the application, or in the procuring or inception of said policy." And at page 274 it was said "the great weight of authority supports the position of the respondent in this action." Concluding, as we have, that the excepting clauses here involved are not substantially different from that involved in the Coodley case, that case is equally controlling with respect to policy 1 as to policies 4 to 8.

With respect to policies 4 to 8 there is a further reason why the judgment on the cross-complaint must be affirmed. What has been said has referred to the excepting clause of the permanent policies alone, but, as has been noted, the term policies contained an incontestability clause without exception and the stamped endorsement on the permanent policies contained the statement: ''2. That this policy shall be INCONTESTABLE as soon as the aforesaid Two-Year Term Policy shall be incontestable.'' It is, of course, axiomatic that if the printed and stamped provisions conflict the latter must prevail. Appellant contends that the stamped provision refers solely to the time when the incontestability clause shall take effect but does not affect its scope. Such might be the understanding of one engaged in the insurance business or one trained in law, but that is not the standard by which the presence or absence of ambiguity is to be determined. The proper test is what the drafter of the instrument might reasonably anticipate to be the effect upon an untrained mind for it is to that class that the instrument is designed to be offered. Viewing together the three provisions, that is, the incontestability clause of the permanent policy with its exception, the unrestricted incontestability clause of the term policy, and scope and effect of the stamped endorsement, and bearing in mind that the latter had been added to the ordinary policies and would

therefore be construed by an insured to be intended to change the usual form in some manner, we cannot say that a lay mind might not construe the endorsement to be an incorporation into the permanent policy of the clause of the term policy in its full scope to the disregard of the printed clause of the permanent policy. The terms, then, being ambiguous within the legal meaning of that word must be construed most strongly against the company. (*Stroehmann* v. *Mutual Life Ins. Co.*, 300 U.S. 435 [57 S.Ct. 607, 81 L.Ed. 732].) It necessarily follows that the disability provision of policies 4 to 8 were not contestable on the grounds alleged.

What we have said relates to that portion of the appeal which seeks rescission and cancellation of the policies upon grounds of fraudulent representations in their procurement. ▆ Assuming that the incontestability clauses nevertheless permit the insurer to attack the claim of disability as distinguished from the right to attack the insurance contract, appellant argues that the evidence is insufficient to support the finding that respondent was in fact disabled during the period for which payment was allowed. The argument is that since respondent was not covered for "occupational" insurance but only for total disability which "prevents the Insured from engaging in any occupation or performing any work for compensation of financial value," it was incumbent upon respondent to show that he was totally disabled from performing any labor of any character for a compensation. The undisputed evidence is that, during part of the period for which payment was allowed, the respondent was under the care of two physicians and during part of the time was under the care of one, both of whom advised him not to do any work of any kind. He was then suffering from acute gall bladder attacks, a bad nervous and cardiac condition, and was confined frequently to bed. The physicians prescribed complete rest and abstinence from any type of work requiring mental or physical activities. On cross-examination one of those physicians testified that he supposed that the insured might have been able to sit behind a cigar counter and sell cigars, and it is upon this testimony that appellant attacks the finding of total disability. We think the rule is well stated in *Wright* v. *Prudential Ins. Co. of America*, 27 Cal.App.2d 195, 216 [80 P.2d 752], which did not involve a policy of "occupational"

insurance, but one of indemnity for total disability which rendered the insured unable "to perform any work for any kind of compensation of financial value." ". . . the test of disability," said the court, "is not what the insured actually did in the effort to perform his duties, but what, in the exercise of due prudence he was reasonably able to do. This was a question of fact on which the trial court's determination, insofar as founded on any substantial evidence, is binding upon us." In *Hill* v. *New York Life Insurance Co.*, 38 Cal.App.2d 627, 633 [101 P.2d 752], the same court gave a fuller definition of the meaning of the disability clause in a case other than that of "occupational" insurance, where it said: "We therefore believe that we should regard the policy as one designed to provide a substitute for earnings when the insured is deprived of his capacity to earn by bodily injury or disease. He must be prevented from performing work and conducting business for compensation or profit. Interpreting the policy in the light of its purpose, the words 'performing any work' mean engaging in any gainful occupation or employment in the customary manner as a workman. The definitions contemplate the substantial doing of those things which are generally regarded as constituting performance of work and conduct of business. . . ." For these reasons we find no error in the conclusions of the trial court that the insured was totally disabled within the terms of the policies.

The further contention is made that the judgment is excessive in that benefits were allowed from the date of the total disability, whereas some of the policies had conflicting provisions as to when such payments should begin. These ambiguities were cured by a rider attached to some of the policies which fixed the date when benefits should be allowed as one month after total disability. This applied to all but two of the policies. One of these two (policy number 2) does not appear to contain any restriction on the provision for payment for the full period of disability but if the provisions contained in that portion of the policy headed "Standard Provisions" were intended to affect the period of payment then it is so ambiguous in that respect that we may assume that neither insured nor insurer understood it. The other (policy number 3) fixed the date when payments of benefits should begin at the time when the insurer had received proof of the disability, but this pro-

vision does not state the period for which benefits are to be paid, but only the time for payment. If the provisions of this policy are not contrary to the construction advanced by appellant they are, to say the least, ambiguous. It is now argued that the judgment is excessive because recovery was allowed from the date of disability, rather than from the date of notice and proof. This does not appear to be the fact. The disability was found to have continued for over eleven months, but the amount awarded, with the exception of policy number 2, covered only ten months. Moreover, this issue was not raised in the trial court. This judgment was entered July 8, 1941, and does not appear on the face to be excessive. The appellant concedes that such notice and proof were in fact received, but argues that they were not given within the prescribed time. The simple answer is that, since the insurer has denied all liability under all the policies, it has waived these conditions relating to time of notice and to proof of the disability. (*Dietlin* v. *General American Life Insurance Co.*, 4 Cal.2d 336, 350 [49 P.2d 590].)

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied November 18, 1942, and the following opinion was thereupon rendered:

THE COURT.—In its petitions for rehearings the appellant complains that we placed too great a burden upon them in reference to the issue of the alleged false representations preceding the executions of the contracts of insurance. The discussion referred to appears in the portion of the opinion relating to appellant's claim that the evidence was insufficient to support the findings upon this issue. We thought it was clear that the quoted language was taken verbatim from these allegations of the cross-complaint, which the trial court found to be untrue. It was not the purpose of the opinion to state a different rule as to the burden of proof upon that issue.

Appellant also urges rehearings in order to give reconsideration of the rule announced in *Coodley* v. *New York Life Ins. Co.*, 9 Cal.2d 269 [70 P.2d 602] and similar cases on the issue of the incontestability clause of the policies. We can see no purpose in taking such action. The decisions of the

Supreme Court are controlling upon the District Court of Appeal, and we would not be justified in departing from the rule of the Coodley case notwithstanding the decisions to the contrary found in other jurisdictions.

The petitions for rehearings in both cases are denied.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1942. Shenk, J., and Edmonds, J., did not participate therein.