## NEW YORK LIFE INS. CO. v. HIATT.

### No. 10503.

Circuit Court of Appeals, Ninth Circuit.

Feb. 16, 1944.

Rehearing Denied April 14, 1944.

Meserve, Mumper & Hughes and Roy L. Herndon, all of Los Angeles, Cal., for appellant.

William H. Brawner, of Los Angeles, Cal., for appellee.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellee, the beneficiary of a policy of insurance on the life of her husband, sued the insurer (appellant) upon a claim of the right to recover double indemnity for fatal accident.[1] The face amount of the policy was $3,000, which sum, with accrued interest and accumulated dividends, the insurer tendered prior to suit. The court found (and the correctness of the finding is conceded) that the insured "died as a result of a fatal accident through purely accidental means, and as a result of the inhalation of carbon monoxide gas." Being of opinion that the insurer was obligated to pay double indemnity for death from such cause the court gave judgment for appellee.

The original policy is before us. Stamped on the cover page in purple ink, in a manner calculated to challenge the attention of the reader, appears the statement "Double Indemnity for Fatal Accident." The same phrase is stamped near the bottom of the first policy page. On page 5 there is a double indemnity rider in which the insurer agrees to pay, in addition to the ordinary life benefit, and for an added premium of $4.50,[2] the sum of $3,000 upon receipt of proof that the death of the insured "resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means * * * provided, however, that such Double Indemnity shall not be payable if the Insured's death resulted, directly, or indirectly, from * * * (b) the taking of poison or inhaling of gas, whether voluntary or otherwise. * * *" In all, this clause of the rider enumerates nine excepted occasions of death.

As already said, it is undisputed that the insured met his death as the result of fatal accident. What effect, then, if any, is to be given the stamped declaration appearing in the policy: "Double Indemnity for Fatal Accident"? If we are to reverse the judgment we must disregard this unqualified declaration and enforce the literal terms of the rider.

The rules applied in the construction of insurance contracts are well understood. Like any contract, the policy is

---

[1] The suit was brought in the California superior court and was removed to the federal court on grounds of diversity.

[2] This premium appears to be included in and payable as a part of the annual premium of $97.14 prescribed on the cover and first page of the policy.

to be read as a whole, and if possible the several parts should be reconciled and given effect. 14 Cal.Jur. 440, § 22. Because contracts of insurance are not the result of negotiation and are generally drawn by the insurer, any uncertainties or ambiguities therein are resolved most strongly in favor of the insured. Blackburn v. Home Life Ins. Co., 19 Cal.2d 226, 120 P.2d 31; Glickman v. New York Life Ins. Co., 16 Cal.2d 626, 107 P.2d 252, 131 A.L.R. 1292. Where the contract is partly written and partly printed the writing controls as being the more deliberate expression of the parties. Legare v. West Coast Life Ins. Co., 118 Cal.App. 663, 5 P.2d 682; Independence Indemnity Co. v. W. J. Jones & Son, 9 Cir., 64 F.2d 312. This rule embraces the use of a rubber stamp in lieu of writing. 14 Cal.Jur. 450, § 28; Royal Ins. Co. v. Caledonian Ins. Co., 182 Cal. 219, 187 P. 748; Trousdell v. Equitable Life Assur. Soc. 55 Cal.App. 2d 74, 81, 82, 130 P.2d 173, 990. These rules of interpretation afford more or less helpful guides to decision.

The insurer says that the stamped matter must be taken either as a purely adjective notation of no substantive effect, or, in the alternative, as an endorsement of insurance coverage. It contends that the matter falls clearly within the first of these categories. It claims that the stamp is responsive to a California statutory requirement that a brief description of the policy be printed on its first page and on its filing back.[3] However, the cited statute relates to accident and health insurance, and § 11 sub. (2) thereof clearly makes the requirement inapplicable to accidental death benefits supplemental, as here, to contracts of life insurance.

It is argued that the stamped phrase is too brief and incomplete to be given substantive effect. But to the lay mind the phrase represents the concise expression of a readily comprehensible thought. The average layman knows what double indemnity means and he has a pretty fair notion of what a fatal accident is. To him the term comprehends all forms of death suffered accidentally. Not inconceivably, the presence of the stamped matter was the decisive factor in effecting the sale of the policy. Speaking of an ambiguity

imported into a policy by a similarly stamped provision relating to incontestability, a California appellate court observed in a recent decision that the applicable measure of understanding is not that of one engaged in the insurance business or trained in the law. "The proper test," said the court, "is what the drafter of the instrument might reasonably anticipate to be the effect upon an untrained mind for it is to that class that the instrument is designed to be offered. Viewing together the three provisions, that is, the incontestability clause of the permanent policy with its exception, the unrestricted incontestability clause of the term policy, and scope and effect of the stamped endorsement, and bearing in mind that the latter had been added to the ordinary policies and would therefore be construed by an insured to be intended to change the usual form in some manner, we cannot say that a lay mind might not construe the endorsement to be an incorporation into the permanent policy of the clause of the term policy in its full scope to the disregard of the printed clause of the permanent policy."[4]

Here the insurer could easily have avoided ambiguity and eliminated all deceptive repugnancy by adding to the stamped matter some brief expression calling attention to the limitations contained in the rider. If, for example, the declaration had read "Double Indemnity for accidental death, as restricted and defined on page 5 hereof," or language of similar import, the insured would have been put on notice that double indemnity was not payable for all fatal accidents, but only for those not later made the subject of an exception. The printed general reference to all provisions found on the ensuing pages does not fairly reach the point. Too, it is significant that the rider mentions only death from accidental injuries effected through "external and violent means," while the endorsement is indicative of a coverage not thus limited. Even a careful reading of the whole instrument would not improbably leave in the uninitiated mind the belief that the specially stamped phraseology was intended to afford a measure of protection broader than that indicated in the printed language of the rider.

[3] Act 3736, General Laws of California 1923, §§ 1 and 2, c. 614, p. 957, statutes of California 1917.

[4] Trousdell v. Equitable Life Assur. Soc., 55 Cal.App.2d 74, 81, 82, 130 P.2d 173, 177, 990.

Not many cases are cited involving comparable facts. In Hessler v. Federal Casualty Co., 190 Ind. 68, 129 N.E. 325, 14 A.L.R. 1329, it was held that matter printed on the back of the policy, purporting to be a summary of what was embraced in it, constituted a part of the contract and controlled over an express provision, printed in the policy in small type, limiting the amount of the coverage in the event of certain accidental deaths enumerated without like limitation in the endorsement. The decision, like the recent opinion of the California court in Trousdell v. Equitable Life Assurance Society, supra, tends to support the view that the stamped endorsement here ought to be given substantive effect.

The cases on which the insurer mainly relies are Maryland Casualty Co. v. Massey, 6 Cir., 38 F.2d 724, 71 A.L.R. 1428, and Northern Trust Co. v. Central Life Ins. Co., 274 Ill.App. 551. In the policy in the Massey case [38 F.2d 725, 71 A.L.R. 1428] the designation "Perfection Accident Policy" was printed upon the outside and at the top of the contract. Following this designation was the statement that it "provides indemnity for death * * * due to accidental injuries, * * * as herein limited and provided." It was thought that the designation was not a part of the contract, and that the qualifying phrase was a sufficient challenge to the holder to look to the terms of the policy rather than the general designation.

The decision in which the insurer takes greatest comfort, perhaps, is the second of these cases, Northern Trust Co. v. Central Life Ins. Co., supra. The factual situation there appears similar to the present. The insured died from the accidental inhalation of carbon monoxide gas, a cause excluded by the double indemnity rider. On the first page and file cover of the policy was the rubber-stamped phrase "with double indemnity benefit from accidental death." The court said that the stamped words "are not very conspicuous." It found "some merit in the contention" that the insured must have understood he was being broadly covered against accidental death and therefore, under the rule relating to ambiguities, the policy should be construed strongly against the company. It thought "an insurance company ought not be permitted to display prominently in a policy the statement that the insured is obtaining certain in-

surance, and then later on in the policy in small print cut down or explain away such insurance." And while the court did not "wish to be understood as placing our approval on the use of the rubber stamp on the policy in question in the manner indicated," nevertheless it thought the stamped matter must be disregarded, because otherwise "the double indemnity would be payable without any exception." The judgment against the insurer was reversed. On rehearing the court expressed itself as being "entirely satisfied with what we have said in the opinion," but it buttressed its holding by saying that, in stamping these words on the policy, the insurer was probably endeavoring to comply with the requirements of a state statute.

With all deference to the Illinois court we think this is not the way to promote fair speaking in insurance policies. Misleading double-talk in these contracts can not be effectively discouraged by the mere wagging of an admonitory finger.

We hold that the stamped matter must be taken as part of the contract.

Affirmed.