## HEIKES v. NEW YORK LIFE INS. CO.
### No. 13728.

United States Court of Appeals
Eighth Circuit.

Dec. 23, 1948.

Donald B. Smith and William B. Randall of Randall, Smith, Blomquist & Krawetz, all of St. Paul, Minn., for appellant.

Harold Jordan and W. E. Rumble of Doherty, Rumble, Butler & Mitchell, all of St. Paul, Minn., for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an action upon a $2,500 policy of life insurance containing a double indemnity clause. Jurisdiction is based on diversity of citizenship. The policy was issued by the defendant (appellee) to Lambert C. Heikes on January 2, 1941. The insured at that time was a senior student at the University of Minnesota. The policy was a Minnesota contract. On the first page or face of the policy, in bold type, in conformity with § 61.25, Minn.St.Ann., appears the following language:

"If the Insured shall die before the Maturity Date, the Company agrees upon receipt of due proof, on forms prescribed by the Company, of such death to pay to said Beneficiary Twenty-Five Hundred Dollars (The Face of This Policy) or Five Thousand Dollars (Double the Face of This Policy) if such death, before the Maturity Date, resulted from accidental means as defined in and subject to the provisions set forth under 'Double Indemnity.'"

The second page of the policy is headed "Double Indemnity" in large black capital letters. The entire page is devoted to that subject and is printed in bold type. It contains the following pertinent language:

"The Double Indemnity Benefit specified on the first page hereof shall be payable

upon receipt of due proof, on forms prescribed by the Company, that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within ninety days after such injury and prior to the maturity of this Policy; provided, however, that such Double Indemnity Benefit shall not be payable if the Insured's death resulted, directly or indirectly, from * * * (d) war or any act incident thereto; * * * (f) operating or riding in any kind of aircraft, whether as a passenger or otherwise, other than as a fare-paying passenger in a licensed passenger aircraft provided by an incorporated passenger carrier and operated by a licensed pilot on a regular passenger route between definitely established airports; * * *."

At the time of his death on July 11, 1943, the insured was a Navy Lieutenant (Junior Grade) stationed at Pensacola, Florida, and was piloting a Navy seaplane on an authorized training flight over the ocean. The plane, the insured, and the men who were with him, disappeared. His body was never found. He was officially reported as having met his death in a plane crash at sea while in the line of duty.

The plaintiff (appellant) was the wife of the insured, having married him after the issuance of the policy, and is entitled to the proceeds of the policy. She brought this action for double the face amount of the policy, upon the theory that, under a proper construction of its terms, the war and aviation restrictions of the double indemnity clause should be disregarded, or the policy should be reformed so as to eliminate such restrictions, on the ground of fraud or mistake. The insurer denied liability for double indemnity, but, after the commencement of the action, paid the plaintiff the face amount of the policy, without prejudice to whatever further rights, if any, she might have thereunder. The issues were submitted to the District Court without a jury.

The court found, in substance, that the death of the insured resulted directly from war and from operation of an aircraft as a pilot; that the policy was not subject to change, alteration or reformation; that the insurer was not precluded from asserting that the insured's death was not within the coverage of the double indemnity clause of the policy; and that the limitations with respect to the payment of double indemnity were clear and unambiguous and not inconsistent with any other provisions of the policy. A judgment of dismissal was entered.

It is the plaintiff's contention that, under the undisputed evidence and the applicable law, which is that of Minnesota, the District Court was required to enter a judgment in her favor, for the following reasons:

(1) That there was printed upon the cover and in the margin of the first page of the policy the words "Double Indemnity Benefit," which should be taken to imply an unconditional promise of the insurer to pay double indemnity for accidental death.[1]

(2) That the inclusion of the pertinent limitations in the double indemnity clause of the policy resulted from fraud or mistake, and that the policy should therefore be reformed so as to permit the plaintiff to recover double indemnity.

[1] The descriptive language on the cover of the policy is:

"Annuity Endowment at Age 65.

"Monthly Life Income commencing at Age 65.

"Option at Age 65 of Cash or Paid-up Life Policy.

"Optional Income commencing before or after Age 65.

"Insurance payable at death before Age 65 or before commencement of income, if earlier.

"Premiums payable for 41 years to Age 65 unless dividends applied to shorten premium paying period.

"Double Indemnity Benefit.

"Annual Participation in Surplus."

The same description appears in small type in the lower margin of the first page of the policy, in the following form:

"Annuity Endowment at Age 65. Monthly Life Income commencing at Age 65. Option at Age 65 of Cash or Paid-up Life Policy. Optional Income commencing before or after Age 65. Insurance payable at death before Age 65 or before commencement of income, if earlier. Premiums payable for 41 years to Age 65 unless dividends applied to shorten premium paying period. Double Indemnity Benefit. Annual Participation in Surplus."

(3) That in a letter written to the insured on January 12, 1942, the agent of the insurer, in urging the insured to keep his policy in force stated: "Your policy has no war restrictions and it affords you full coverage under any circumstances." That this statement was a misrepresentation which induced the insured to keep the policy in force, and that the plaintiff is therefore entitled to have the policy reformed to conform to the misrepresentation.

(4) That the agent in making this misrepresentation violated a penal statute of the State, enacted for the protection of the plaintiff, and that the insurer is therefore liable to the plaintiff for double indemnity.

■ Assuming, without deciding, that the words "Double Indemnity Benefit" on the cover and in the margin of the first page of the policy are to be regarded as a part of the insurance contract, it is our opinion that the words are not inconsistent with the limitations in the double indemnity clause, and create no ambiguity. This was a life policy providing for a double indemnity benefit. The meaning of the words "Double Indemnity Benefit" in what was obviously intended as a mere description of the type or form of policy issued, reasonably may not be distorted into an implied promise to pay double indemnity for accidental death not within the terms of the double indemnity clause.

In Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416, the Supreme Court of the United States said:

"* * * It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. * * * This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings."

The Bergholm case has been frequently cited with approval by the Supreme Court of Minnesota. Moreover, that court, in Rein v. New York Life Ins. Co., 210 Minn, 435, 299 N.W. 385, at page 389, said:

"* * * It is of course important that ambiguous language should not be permitted 'to serve as traps for policyholders,' yet it is equally important, 'to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations.' Williams v. Union Central Life Ins. Co., 291 U.S. 170, 180, 54 S.Ct. 348, 352, 78 L.Ed. 711, 718, 92 A.L.R. 693. Cf. Juster v. John Hancock Mut. Life Ins. Co., 194 Minn. 382, 385, 260 N.W. 493."

The case of New York Life Ins. Co. v. Hiatt, 9 Cir., 140 F.2d 752, 168 A.L.R. 551, upon which the plaintiff relies, differs from the instant case. The applicable law in the Hiatt case was that of California. The words which were stamped upon the policy and which it was thought rendered the double indemnity clause ambiguous were "Double Indemnity for Fatal Accident." Those words were misdescriptive of the policy, the indemnity clause of which contained limitations and exceptions. The words "Double Indemnity for Fatal Accident," stamped on the Hiatt policy, if given the effect of a promise by the insurer, were inconsistent with the limitations and exceptions of the double indemnity clause and rendered that clause ambiguous.

It is the public policy of the State of Minnesota that life insurance companies shall not discriminate between insureds of the same class as to premiums or benefits, or make any agreements not plainly expressed in their policies. Minn.Stat.Ann. § 61.06. The only agreement plainly expressed in the policy in suit with respect to payment of double indemnity was that contained in the double indemnity clause itself.

■ We find in the record no evidentiary basis for the plaintiff's contention that the questioned limitations of the double indemnity clause were the result of either fraud or mistake. The burden of proving fraud or mistake was upon her. There is no evidence whatever that the agent who solicited the application for the policy in suit from

the insured (who, at the time, had not entered the armed service of the United States) misrepresented the terms of the policy which was issued. The double indemnity clause was in the form then being written by the insurer. The form of the policy, presumably was one which had been filed with the Insurance Commissioner of the State of Minnesota and had not been disapproved by him. Minn.Stat.Ann., § 61.36. The insured, in his application for the policy, stated that he had not participated as a passenger or otherwise in aviation or aeronautics, and did not contemplate participating in aeronautics.

▮▮ Under Minnesota law, the insured, having accepted and retained the policy in suit, was charged with knowledge of its terms. Wilkins v. State Insurance Co. of Des Moines, 43 Minn. 177, 179, 45 N.W. 1, 2; Parsons, Rich & Co. v. Lane, 97 Minn. 98, 116, 106 N.W. 485, 493, 4 L.R.A.,N.S., 231, 7 Ann.Cas. 1144; Rein v. New York Life Ins. Co., 210 Minn. 435, 440, 441, 299 N.W. 385, 387. No inference of fraud or mistake can arise from the mere assertions of the plaintiff that the insured did not understand or may not have understood what his policy contained because he was probably too busy to read it.

In Lumber Underwriters of New York v. Rife, 237 U.S. 605, 609, 35 S.Ct. 717, 59 L.Ed. 1140, a case which, in principle, is not dissimilar to this case, Mr. Justice Holmes said:

"When a policy of insurance is issued, the import of the transaction, as every one understands, is that the document embodies the contract. It is the dominant, as it purports to be the only and entire, expression of the parties' intent. * * * No rational theory of contract can be made that does not hold the assured to know the contents of the instrument to which he seeks to hold the other party. * * * Of course, if the insured can prove that he made a different contract from that expressed in the writing, he may have it reformed in equity. What he cannot do is to take a policy without reading it, and then, when he comes to sue at law upon the instrument, ask to have it enforced otherwise than according to its terms."

The plaintiff in the instant case, we think, has completely failed to prove that the insured made a different contract than that which was expressed in the policy.

▮ The inaccurate statement made by the agent of the insurer, more than a year after the policy was issued, to the effect that its coverage was subject to no restrictions, is, in our opinion, of no help to the plaintiff. There was no evidence that the insured was actually misled by this statement, and, since he was charged with knowledge of the terms of his policy, he could not reasonably be held to have been deceived. The agent was probably referring to the policy as a straight life policy and did not have in mind its double indemnity feature. The only effect that the misstatement of the agent could possibly have had was to induce the insured to keep the policy in force until the time of his death. Had the insured failed to do so, the plaintiff could have recovered nothing from the insurer.

A statute of Minnesota, § 61.10, Minn. Stat.Ann., provides as follows:

"No life insurance company doing business in this state, and no officer, director or agent thereof, shall issue or circulate, or cause or permit to be issued or circulated, any estimate, illustration, circular or statement of any sort misrepresenting the terms of any policy issued by it or the benefits or advantages promised thereby, or the dividends or shares of surplus to be received thereon, or shall use any name or title of any policy or class of policies misrepresenting the true nature thereof.

"Any person violating the provisions of this section shall be guilty of a misdemeanor, and the license of any company which shall authorize or permit a violation of this section shall be revoked."

We think that the District Court was not compelled to find that the agent in this case issued or circulated a statement misrepresenting the terms of the policy in suit, within the meaning of this statute. Neither do we find in the statute any implication that if a misrepresentation is made by an agent as to the terms of a policy already issued, the policy can be amended to con-

form to the misrepresentation. Obviously, such a modification of an existing life insurance contract would be directly opposed to the public policy of the State forbidding discrimination between policyholders of the same class with respect to premiums and benefits. If this statute is to be regarded as having created a civil right of action in favor of the plaintiff, it is against the agent for damages, and we fail to see what damages the plaintiff could have sustained from the efforts of the agent to induce the insured to keep his policy alive.

In conclusion, we take the liberty of calling attention to some of the cases in which this Court has held that it will not reverse a trial judge who has reached a permissible conclusion as to a doubtful question of state law. Magill v. Travelers Ins. Co., 8 Cir., 133 F.2d 709, 713; Doering v. Buechler, 8 Cir., 146 F.2d 784, 788; Railway Mail Ass'n v. Chamberlin, 8 Cir., 148 F.2d 206, 208; Russell v. Turner, 8 Cir., 148 F.2d 562, 564.

In this case we think the District Court reached not only a permissible, but a correct, conclusion.

The judgment appealed from is affirmed.