153 So.2d 237

## AMERICAN FIRE AND CASUALTY COMPANY

v.

## Ann Cook KILGORE.

6 Div. 772.

Supreme Court of Alabama.

May 9, 1963.

Rives, Peterson, Pettus & Conway, Birmingham, for appellant.

Curtis, Maddox & McLaurin, Jasper, for appellee.

PER CURIAM.

Appellee filed her suit in the Circuit Court of Walker County to recover of appellant (defendant below) the value of a lost white gold ring with ten small diamonds and one solitaire, which she alleged the defendant insured against loss.

The trial judge sitting as a trier of fact gave judgment for the plaintiff in the sum of $1,000.00 plus interest. From this judgment defendant appeals in conformity with law to this court.

The issue here presented by the argued assignments of error (2 and 4) is whether or not defendant is liable, under the terms of the policy, for more than $100.00, which latter amount, before commencement of suit, it tendered to plaintiff in satisfaction of her claim and which she refused. After suit commenced defendant paid this sum into court.

Defendant, through its agent, K. L. Jones & Company, Orlando, Florida, following plaintiff's telephonic conversation and request, on February 9, 1957, issued a policy of insurance, expiring Feburary 9, 1958, which provided coverage against loss or damage not in excess of $1,000.00, "on personal effects such as are usually carried by tourists and travelers, belonging to and used or worn by the Assured, etc."

The policy contains a provision as follows:

"This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added thereto, as provided in this policy."

Thereupon follows pertinent exclusionary provisions as follows:

"THIS POLICY INSURES AGAINST:

"All risks of loss of or damage to the insured property, except as hereinafter provided.

"THIS POLICY DOES NOT INSURE:

(a) "While on the premises of the domicile of the Assured;

(b) "While in storage, except at points and places en route during travel and incidental thereto;

"Personal effects in the custody of students while in fraternity or sorority houses, dormitories or on the premises of schools or colleges, except against risk of fire only;

(c) "Jewelry, watches, articles consisting in whole or in part of silver, gold or platinum and furs or articles trimmed with or consisting principally of furs, for more than 10% of the total amount of insurance for which this policy is written, nor for more than $100.00 on any one such article;

(d) "Except when in the custody of a common carrier; loss or damage caused by theft or pilferage of the insured property while left unattended in or on any automobile unless such automobile is equipped with a fully enclosed body or compartment, and the loss be a direct result of violent forcible entry (of which there shall be visible evidence) from a fully enclosed body, the doors and windows of which shall have been securely locked, or from a compartment which shall have been securely locked, but in no event shall this Company be liable under this clause for more than 10% of the total amount of insurance for which this policy is written, nor for more than $250.00 in any one loss, whichever is the lesser;

(e) "Loss or damage caused by gradual deterioration, moth, vermin, inherent vice or damage sustained due

to any process or while being actually worked upon and resulting therefrom;

(f) "Against breakage of articles of a brittle nature unless caused by thieves, fire or accident to conveyances;

(g) "Against loss or damage caused by or resulting from: (1) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack, (a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or forces; (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority or risks of contraband or illegal transportation or trade."

Superimposed on paragraph (a) above, by rubber stamp in blue ink, is the word "VOID" calculated to challenge the attention of the insured. Likewise superimposed on paragraph (d) by rubber stamp in blue ink five successive times is the same word "VOID." On the original policy this word appears diagonally on paragraph (d) four times, and again on part of the last line of (d) which is at the top of the right hand column.

The contention of appellant is that the exclusionary paragraph (c), above quoted, on which the word "VOID" was not superimposed, remained in full force and effect and excluded the lost ring from the coverage of the policy above the sum of $100.00.

The question here for determination is whether or not the superimpositions of the word "VOID" in the manner appearing on the policy make the policy ambiguous and uncertain to the extent, when considered along with the testimony of the insured hereafter quoted, of imposing liability on the insurer for the full value of the lost ring instead of liability for only $100.00.

In the case of New York Life Insurance Company v. Hiatt, 9 Cir., 140 F.2d 752, 168 A.L.R. 551, the court observed:

"\* \* \* Not inconceivably, the presence of the stamped matter was the decisive factor in effecting the sale of the policy. Speaking of an ambiguity imported into a policy by a similarly stamped provision relating to incontestability, a California appellate court (Trousdell v. Equitable Life Assurance Society, 55 Cal.App.2d 74, 81, 130 P.2d 173, 177) *observed in a recent decision that the applicable measure of understanding is not that of one engaged in the insurance business or trained in the law. 'The proper test,' said the court, 'is what the drafter of the instrument might reasonably anticipate to be the effect upon an untrained mind for it is to that class that the instrument is designed to be offered.* \* \* \*'" [Emphasis supplied.]

Here the undisputed testimony is that plaintiff called defendant's agent in Orlando and requested issuance of the policy. The plaintiff's testimony on direct examination, uncontradicted and undisputed by other testimony, is as follows:

"Q. What did you tell him (Mr. Jones, the agent) on this occasion?

"A. I told Mr. Jones I was going on a trip, that I had just purchased a new mink stole, and that I wanted to be covered up to one thousand dollars, and he said I would be covered as of that day.

"Q. What did he say about jewelry?

 

"A. He said jewelry and furs up to one thousand dollars, and that I would be covered to that amount, and * * *

* * * * * *

"Q. Did he tell you that you were covered?

"A. Yes, sir.

"Q. Did you later receive the policy which I have showed you here?

"A. Yes, Sir. (Policy here introduced in evidence.)"

We cannot say that a lay mind, in the light of the above evidence, and the stamped words on the exclusionary provisions of the policy, might not construe the policy to conform to the agreement that the jewelry was covered for its value, but not exceeding $1,000.00.

Here, as said in New York Life Insurance Company v. Hiatt, supra, the insurer could easily have avoided the ambiguity and eliminated the idea of coverage from the mind of the insured by adding to the stamped words more definite and positive superimpositions of restrictive import and, also, by indicating on paragraph (c) that it remained in full force and effect. We think that a careful reading of the exclusionary provisions (which we lettered for convenient reference) would probably leave on an uninitiated mind, already impressed as here by a promise of coverage, the belief that the word "VOID", severally superimposed as above described, was intended to modify the exclusionary provisions so as to afford the promised coverage of the jewelry.

As said in Taylor v. Loyal Protective Ins. Co., (Mo.) 194 S.W. 1055, 1057, with words of like import in this court:

" * * * [S]o long as the contract is plain and unambiguous, not open to different constructions, and is so framed as that the insured is not justified in thinking the contract to be something other than it is, it is not within the power of the courts to change it or to make a new contract for the parties by judicial construction. * * * *"

On the other hand it is our opinion as here that where the contract, coupled with an oral promise of coverage, contains phraseology superimposed seemingly at random by a rubber stamp or otherwise, that leads the insured reasonably to believe that the policy conforms to her agreement with the agent as to coverage, the defendant should be made accountable for the full loss, especially where, as here, the insured is put to a disadvantage in probably failing to procure another policy comporting with the desired coverage.

The judgment of the trial court is due to be affirmed.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN, and COLEMAN, JJ., concur.